446 So.2d 1347 (1984)
Robin HOOD & Suzy Greene
v.
ASHBY PARTNERSHIP dba Maison Coteau Apartments.
No. 83 CA 0319.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
*1348 Paula Cobb, Baton Rouge, for plaintiffs/appellees.
Frank H. Dickinson, III, Baton Rouge, for defendant/appellant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
Plaintiffs, Robin Hood and Suzy Greene, filed this suit against defendant, Ashby Partnership dba Maison Coteau Apartments, seeking a return of a security deposit given to secure the performance of a written lease agreement between plaintiffs and defendant. In addition to the return of the deposit, the plaintiffs also sued for damages and attorney's fees. After a trial on the merits, the lower court ruled that the plaintiffs were entitled to the return of their security deposit, and additionally, awarded them $250.00 in attorney's fees; however, the plaintiffs' demand for damages was rejected. The defendant has appealed this decision.
The transcript reveals the following facts. On May 3, 1982, plaintiffs Robin Hood and Suzy Greene entered into a written contract of lease with the defendant. The object of the agreement was an apartment located close to the Baton Rouge campus of Louisiana State University. The contract contained the following language relating to the term of the lease: "This lease is for a term commencing on the 3rd day of May 1982, and ending on the last calendar day August 3rd, 1982." It can readily be seen that there exists some ambiguity as to the precise term of the lease. Does the lease terminate on the "last calendar day" of August, 1982, or on August 3, 1982? After a thorough review of the record, we think the parties intended August 3, 1982, to be the expiration date. The plaintiffs were in hopes of finding a dormitory room at L.S.U. for the fall, 1982 semester. Thus, they needed an apartment only during the summer months and until they could secure a dormitory room. This, they surmised, would be sometime around the first of August.
In addition to the provision for a term, the lease also provided the following stipulation entitled "Automatic Renewal":
If Lessee, or Lessor, desires that this lease terminate at the expiration of its term, he must give to the other written notice at least 30 days prior to that date. Failure of either party to give this required notice will automatically renew this lease and all of the terms thereof. This provision is a continuing one and will apply at the expiration of the original term and at the expiration of each subsequent term.
The testimony reveals that sometime during the first week in August of 1982, plaintiffs tendered defendant a check representing rent for the entire month of August. Additionally, plaintiffs also testified that at the time they gave defendant written notice they would be vacating the apartment *1349 at the end of August. The rent check and notice of termination were given to Yvonne Ross, one-time manager of the defendant's apartments who moved out of state before the trial and was not available to testify.
At the end of August, the plaintiffs vacated the apartment. Immediately after moving out, the plaintiffs requested the return of their damage deposit from Mrs. Ross's husband and allegedly provided him with a forwarding address. He informed them that it usually took 30 days for a request to be processed because of bookkeeping considerations. The plaintiffs testified they left the apartment undamaged and clean.
Approximately thirty days later, the plaintiffs' security deposit had not been returned nor had the plaintiffs received an itemized list of expenses reflecting sums expended by defendant in rehabilitating plaintiffs' apartment into rentable condition. In response, the plaintiffs allegedly called Yvonne Ross who informed plaintiffs their check was not ready. Subsequently, never having received any money, the plaintiffs filed suit in City Court in Baton Rouge. At trial, the plaintiffs insisted that they provided defendant with written notice of termination, a forwarding address where defendant could mail plaintiffs' check, and that they vacated the apartment in an undamaged and clean condition.
The only witness to testify for the defendant was Earl Myers, general manager of the defendant corporation. Essentially, Myers sought to establish three points by his testimony: 1) The plaintiffs had not complied with the lease and thus were not entitled to the return of their security deposit; 2) The plaintiffs had not provided defendant with written termination of their occupancy or given defendant a forwarding address; and 3) The plaintiffs left the carpet in the apartment in such a damaged condition that the amount of money it would cost to repair the carpet would exceed the amount given as security.
As noted earlier, the lower court held in favor of the plaintiffs on the question of the return of their security deposit and attorney's fees. However, because the trial court felt that the plaintiffs had not proven that they had supplied defendant with a forwarding address (and he had some doubts as to whether written notice of termination was given), he concluded that defendant's failure to return the deposit within one month after the termination of the lease was not willful, and thus did not expose defendant to the penalty provision of La.R.S. 9:3252. The trial judge did not give reasons explaining why he though the plaintiffs were entitled to the return of their deposit, nor did he seem to pay any attention to the contract of lease signed by the plaintiffs.
The appellant urges two assignments of error on appeal. These assignments may be combined into one argument: the lower court erred when it ignored the automatic renewal provision of the lease and its effect on La.R.S. 9:3251 C.
The Lessee's Deposit Act in Louisiana is contained within four provisions of the Revised Statutes. These statutes provide as follows:
§ 3251 A. Any advance or deposit of money furnished by a tenant or lessee to a landlord or lessor to secure the performance of any part of a written or oral lease or rental agreement shall be returned to the tenant or lessee of residential or dwelling premises within one month after the lease shall terminate, except that the landlord or lessor may retain all or any portion of the advance or deposit which is reasonably necessary to remedy a default of the tenant or to remedy unreasonable wear to the premises. If any portion of an advance or deposit is retained by a landlord or lessor, he shall forward to the tenant or lessee, within one month after the date the tenancy terminates, an itemized statement accounting for the proceeds which are retained and giving the reasons therefor. The tenant shall furnish the lessor a forwarding address at the termination of the lease, to which such statements may be sent.

*1350 B. In the event of a transfer of the lessor's interest in the leased premises during the term of a lease, the transferor shall also transfer to his successor in interest the sums deposited as security for performance of the lease and the transferor shall then be relieved of further liability with respect to the security deposit.
C. Paragraph A of this Section shall not apply when the tenant abandons the premises, either without giving notice as required or prior to the termination of the lease.
§ 3252.
The willful failure to comply with R.S. 9:3251 shall give the tenant or lessee the right to recover actual damages or two hundred dollars, whichever is greater, from the landlord or lessor, or from the lessor's successor in interest. Failure to remit within thirty days after written demand for a refund shall constitute willful failure.
§ 3253.
In an action brought under R.S. 9:3252, the court may in its discretion award costs and attorney's fees to the prevailing party.
§ 3254.
Any waiver of the right of a tenant under this part shall be null and void.
La.R.S. 9:3251 C. clearly states that Section A of § 3251 shall not apply when the tenant abandons the premises without giving the proper notice or prior to the termination of the lease. The standard lease employed in this case required the plaintiffs to provide defendant with notice of termination thirty days prior to the expiration of the term. Failure to do so would result in the automatic renewal of the lease. Thus, thirty days prior to August 3, 1982, or by July 4, 1982, the plaintiffs were required to notify the defendant they would be moving. If they did not provide such notice by that date, the lease would be automatically renewed.
The record in this case is clear that the plaintiffs did not provide the proper notice to the defendant, and, in effect, abandoned the apartment prior to the termination of the lease in contravention of La.R.S. 9:3251 C. As noted above, the lease agreement in question had a three month termMay 3, 1982 until August 3, 1982. The lease also had a provision which required notice of termination thirty days prior to the expiration of the original term. This provision was clear, unambiguous and situated very near the beginning of the contract. (Additionally, at the conclusion of the lease, situated immediately above the signature of the plaintiffs, the following sentence is written in bold, all-capital letters: "Read your lease before signing.") Thus, according to the express terms of the contract, freely entered into by all parties, the plaintiffs were required to give defendant notice of termination thirty days prior to August 3, 1982, or July 4, 1982. Moreover, as per the automatic renewal provision (which was also captioned in bold, all-capital letters), if notification was not forthcoming by July 4, 1982, the lease was automatically renewed for another three months, or until November 4, 1982.
It is unquestioned that plaintiffs did not provide the thirty day notice. Indeed, they freely admit that notice was not provided until the first week in August (and even then the trial judge had some doubts as to whether the August notice was in writing). This notice was without legal effect. By not providing the thirty day notice on July 4, 1982, the plaintiffs had already "agreed" to extend the lease until November 4, 1982. As such, when the plaintiffs vacated the apartment on August 31, 1982, they were abandoning the premises prior to the termination of the lease.
It is axiomatic that agreements legally entered into have the effect of law upon the parties thereto, and courts are bound to give legal effect to these agreements according to the true intent of the parties, as generally determined by the words of the contract when these are clear and specific. La.C.C. articles 1901 and 1945; Snedegar v. Noel Estate, Inc., 438 So.2d 677 (La.App. 2nd Cir.1983). Furthermore, because a court may not impute to *1351 the parties the use of language without meaning or effect, some effect must be given to every word or clause in the contract. Lambert v. Maryland Casualty Company, 418 So.2d 553 (La.1982). When we apply these principles to the case sub judice, we think the effect to be given the automatic renewal provision must result in the conclusion that the plaintiffs violated the lease by failing to give the proper notice of termination and thereby abandoned the premises before the expiration of the lease term.
Of course, our inquiry cannot end here. The question is presented as to whether or not the enactment of La.R.S. 9:3251 C. means that a tenant automatically must forfeit his entire deposit because of noncompliance with a lease obligation, or does it simply mean that if the tenant does not fulfill his lease obligation completely, the lessor need not furnish an itemized list of expenses, or need not furnish it within one month of termination, but still must return any security deposit money not expended on repairs?
Consistent with our earlier analysis, we first turn to the lease agreement entered into by the parties for further guidance. Under the caption "Security Deposit" we find the following language:
Notwithstanding any other provisions expressed or implied herein, it is specifically understood and agreed that the entire security deposit aforesaid shall be automatically forfeited as liquidated damages should Lessee vacate or abandon the premises before the expiration of the lease.... (emphasis in original).
This contractual provision seems to address the very question raised above. However, because we feel that the forfeiture provision may, in some respects, conflict with La.R.S. 9:3254, we prefer to extend our inquiry one step further.
In early 1975, this court decided the case of Garb v. Clayton-Kent Builders, Inc., 307 So.2d 813 (La.App. 1st Cir.1975). The holding in the Garb case was based upon the law in effect prior to the 1974 Amendments to the Lessee's Deposit Act. Among other things, these amendments added what is now subsection C. of La.R.S. 9:3251. The law prior to the 1974 amendments did not provide for a situation where the lessee abandons the premises, either without giving notice as required or prior to the termination of the lease, but nevertheless demands his deposit back. Thus, the decision in Garb was not predicated upon the existence of La.R.S. 9:3251 C.
In Garb, the tenant vacated the premises without giving the notice as required in the lease and then filed suit for the return of the damage deposit. While finding the lessor had not violated the Lessees' Deposit Act, the court did make some interesting observations; and, although they are only peripheral to the holding in the case, they do shed light upon the problems presently before the court. Thus, we quote from the court's opinion as follows:

We find that the statute does not sanction forfeiture of a deposit solely because of Lessee's alleged noncompliance with or breach of a lease obligation. On the contrary, a Lessor's right to retain all or part of a deposit is expressly conditioned upon the retainage being reasonably necessary to remedy a stated default by Lessee or to restore the premises when unreasonable wear and tear has resulted from the Lessee's occupancy. When the privilege of retainage exists and is exercised by a Lessor, the statute imposes upon Lessor the obligation of accounting for the retainage by means of an itemized statement which must include reasons therefor. We think the obvious purpose of requiring itemization is to prevent a Lessor from arbitrarily withholding a deposit, and at the same time furnish a criterion for determining whether the retainage is reasonably necessary to alleviate the alleged default of the Lessee or to cure the effect of unreasonable wear and tear found upon termination of Lessee's occupancy. 307 So.2d at 815. (emphasis supplied).
As noted above, the law upon which the Garb case was predicated was specifically amended by the enactment of La.R.S. *1352 9:3251 C. We think the amendments to the Lessee's Deposit Act must result in a conclusion different from the one reached by the court in Garb.
It has been previously written that the purpose of the Lessee's Deposit Act was, and is, to provide lessees with mechanisms to recover rent deposits and to prevent arbitrary withholding thereof, and that by providing for damages and attorney's fees where the landlord wrongfully retains a security deposit, the arbitrary retention of the deposit will be discouraged. Altazin v. Pirello, 391 So.2d 1267 (La.App. 1st Cir. 1980); Curtis v. Katz, 349 So.2d 362 (La. App. 4th Cir.1977), writ denied, 351 So.2d 179 (La.1977).
We do not feel that the enactment of La.R.S. 9:3251 C. changes or defeats the purposes of the Lessee's Deposit Act. It simply requires the tenant to abide by the terms of a lease he may enter into, or to the law of notice set forth in our Civil Code in article 2686. If he fails to do so, then as a sanction the tenant may not recover any of his security deposit. Therefore, we feel that La.R.S. 9:3251 C. sanctions the forfeiture of the entire security deposit where the lessee breaches a lease obligation relating to the proper notice to be given, or where the tenants abandon the premises prior to the expiration of the term. In the case sub judice, the plaintiffs clearly violated the express provisions of La.R.S. 9:3251 C. and, as such, are not entitled to the return of their security deposit. Of course, neither are they entitled to attorney's fees. Accordingly, we hold that the lower court was manifestly erroneous in granting plaintiffs the return of their security deposit and attorney's fees, and we reverse the trial judge's decision at appellee's cost.
REVERSED.