491 So.2d 760 (1986)
AMOCO PRODUCTION COMPANY
v.
William Shewen SLAUGHTER, IV, et al. (Two Cases).
Nos. CA 85 1463, CA 85 1464.
Court of Appeal of Louisiana, First Circuit.
June 24, 1986.
Writs Denied October 3, 1986.
*761 James A. Barton, Dona J. Dew, New Orleans, for plaintiff-third appellant Amoco Production Co.
Ashton L. Stewart, and Lehman Preis, Baton Rouge, for defendants-first appellants Vivian Stevenson Yancy, Anna Stevenson Yancy, Alex Anderson, Mildred Anderson Hurlock, Mavis Rose Anderson Miller, Wanda Anderson Leblanc, Stanley Anderson, Jr., Kevin A. Anderson, Dawn Anderson, Budrick Stevenson, Charles Dewitt Stevenson, Delores Stevenson Theus, Annie Robins Stevenson, Robert Louis Stevenson, Dr. Enola Louise Stevenson, Clarence Stevenson, David Stevenson, Aldero Stevenson, Lillian Markey Stevenson, Verla Stevenson Jackson, Percy Felix Jackson, Percy Felix Jackson, Jr., Lizzie Jackson Emery, Johnnie B. Jackson Whitmore, Marian Adean Goff Davis, Roy Edard Goff, Jr., Ollie Goff Phelgm, Jessica Goff Jones, Marie Thompson, Mable Westherspoon Ester, Mary George Jackson, Henry W. Jackson, Nola Mae Jackson Moses, Willie Morris Jackson, Mary Goff Hayes, Areese Ester Gray, Emma Leon Goff Nicholson, Gloria Goff Powell, Myrtle Williams, Armena Rivers McMillen, Simmie George Watts.
Curtis Stafford, Jr., Baton Rouge, for defendants-second appellants Marie M. Bickham, Testamentary Executrix of the Succession of Talmadge D. Bickham, Jr.
Charles St. Dizier, William Strain, Baton Rouge, for defendants-appellees Dr. William Shewen Slaughter, IV, Dorothy S. Foote, Gilbert Mills Slaughter, Mansel S. Slaughter, Katherine D. Harris, John W. Day, Robert Day, William Spencer Day, Jr., Martha Thompson Ball, Dr. William S. Ball, Jr., Martha Sarah Ball, Elizabeth McIlwaine Preston Kraft, Frances Rhea Preston Mills, James Rhea Preston, David Vaughn Black, Maragaret Black Armstrong, Annie Mill Black Elliot, Mary Anne Black Sander, Harriet W. Black, Jean Fleming Chamblee, Thomas Raymond Fleming, Jr., Mary Campbell McMinn, Elizabeth Campbell Abel, M.P. Topousis, Crutcher-Tufts Corp., Albert B. Crutcher, Jr., J.D. Tufts, II, Robert A. Davis.
A.J. Lord, Zachary, for defendant-appellee Henry Matthews.
W. Steven Mannear, Baton Rouge, for defendants-appellees Edgar W. Walker, Gayle B. Davis.
C. Alvin Tyler, Baton Rouge, for defendant-appellee Helen M. Smith.
Leuann Kester Greco, Baton Rouge, for defendant-appellee Porter Scott.
James R. Lewis, and Patrick G. Tracy, Lafayette, for defendant-appellee Robert Day.
Christopher F. Carroll, Wailuku, Maui, Hawaii, for defendants-appellees Joyce Marie Golf Anderson, Janice Veranda Goff, Matthew W. Goff, Jr.
Robert Hawthorne, Jr., Baton Rouge, for defendant-fifth appellant Pauline Stevenson.
John Dale Powers, Baton Rouge, for defendants-fourth appellants David Stewart, Dennis Stewart.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
JOHN S. COVINGTON, Judge.
These two suits arose out of petitions in concursus and for declaratory judgment filed by plaintiff, Amoco Production Company (Amoco), to resolve title conflicts among the defendants to certain tracts of land underlying a portion of a now abandoned railroad right of way in East Baton Rouge Parish. The district court ordered the suits consolidated because they involved many of the same defendants and the same legal issue, i.e., whether the area underlying the disputed section of the right of way, which originally crossed the acreage of a large farm known as the "Old Slaughter Homestead," was included in a 1915 judicial partition of that property. The district court held that the right of way was not included in the partition, and *762 from a judgment decreeing certain defendants the owners of the disputed tracts of land, Amoco and most of the remaining defendants have appealed.
We affirm.
In 1903, a railroad purchased a 100 foot wide right of way across a portion of the Old Slaughter Homestead; this right of way totaled about nine acres. All parties have stipulated to a fact clearly shown by the parish conveyance records, that the railroad purchased a servitude only. In 1913, two of the three owners in indivision of the farm petitioned for judicial partition. The petitioners, Mary Campbell and Betty Vaughan, each owned a one-fourth interest in the farm; their brother, William Slaughter, owned a one-half interest. Campbell and Vaughan's petition described the property to be partitioned by neighboring landowners, and further described it as containing an area of approximately 550 acres, "less nine acres sold to railroad." Campbell, Vaughan and Slaughter had owned the farm in 1903 and were the parties who had conveyed the servitude to the railroad that year.
The district court appointed W.B. Smith to survey the farm and make a recommendation for partition of the property in kind. The surveyor prepared and submitted to the court a report or proces verbal outlining his recommendation, attaching to the report a map of the farm "showing proposed lines to sub-divide the property and effect the partition desired." In the report, the surveyor divided the farm into four lots, numbered Lots One, Two, Three and Four. In a table of reference in the report he gave the acreage of each lot and alphabetical or point designation to the external boundaries of each lot, referenced to the map. Smith indicated that Lots One and Four were further designated by a red border on the map. Underneath the table of reference in the report was a notation stating that the area of the railroad right of way and a public road crossing the farm was not included in the reference table figures calculating the total acreage of each lot.
The district court rendered judgment in 1915 ordering partition in kind of the farm, which was described in that judgment by its boundaries with neighboring landowners and further described as containing approximately 550 acres, "less nine acres sold to railroad." The judgment further ordered that the partition be effected according to the W.B. Smith map filed in the partition suit. In accordance with this order, an act of partition was executed before a notary public, duly filed and recorded, and eventually approved and homologated by the district court. The act of partition began the description of the property to be partitioned as follows:
... four (4) lots, numbered one (1), two (2), three (3) and four (4), as shown upon the map made by W.B. Smith, Civil Engineer, and filed in said suit, and in accordance with said judgment ordering this partition, ...
The act of partition further indicated that the four lots had been grouped by the court-appointed appraisers into two subdivisions, designated as Subdivisions "A" and "B", as follows, in pertinent part:
"SUBDIVISION `A'
Lot No. One (1) as shown on said map, bounded North by lands appearing on the official map of (East Baton Rouge) Parish as lands of Wm. Griffith; East by lands of Wm. Griffith and lands of Henry Rivers; South by the right of way of the L.R. & N. Co. and Lot No. Two (2), and West by said right of way, Lot No. Two (2), and lands of William Griffith,
AND
Lot No. Two (2) as shown on said map, bounded North William Griffith and Lot No. One (1); East by Lot No. One (1) and right of way of the L.R. & N. Co.; South by Lot No. Three (3), and West by Lot No. Four (4).
SUBDIVISION `B'
Lot No. Three (3) as shown on said map, bounded North by Lot No. Two (2), East by right of way of the L.R. & N. Co. and *763 lands of Henry Rivers; South by the Willow Springs Plantation, property of the Estate of E.L. Woodside; West by Port Hickey Plantation and Lot No. Four (4).
AND
Lot No. Four (4) as shown on said map, bounded North by lands S. Turner and Wm. Griffith and Lot No. Two (2); East by Lots Nos. Two (2) and Three (3); South by the Port Hickey Plantation, and West by lands of Mrs. S.A. Young."
Drawing lots, Campbell and Vaughan received Subdivision "A" and Slaughter received Subdivision "B".
In the 1970's, Amoco drilled and completed a producing gas well in a unit which includes the portion of the railroad right of way which once crossed the Old Slaughter Homestead. Amoco initiated these two suits to resolve a dispute among the defendants and between certain defendants and Amoco as to the ownership of proceeds from the gas well attributable to that property. The defendants are primarily divisible into two groups: (1) the heirs of Campbell, Vaughan and Slaughter, referred to herein as "the Slaughter group" (appellees) and (2) the heirs and assigns of certain past purchasers of a portion of the Old Slaughter Homestead, referred to herein as "the Stevenson-Rivers group." After trial on the merits of the consolidated suits, the trial court ruled in favor of the Slaughter group. It is from this judgment that Amoco and many of the Stevenson-Rivers group have appealed.
In his written reasons for judgment, the trial judge concluded that the right of way was excluded from the 1915 partition, based upon his determination that the phrase, "less nine acres sold to railroad" in the partition agreement was clear and unambiguous.
We note initially that the trial court was incorrect in stating, in the written reasons for judgment, that the phrase "less nine acres sold to railroad" was to be found in the partition agreement itself. This phrase was present only in the original petition for partition and in the initial judgment ordering partition. However, this error does not affect our conclusion that the trial court's ruling in favor of the Slaughter group is not manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
Agreements legally entered into have the effect of law upon the parties thereto, and courts are bound to give legal effect to these agreements according to the true intent of the parties; that intent is to be determined by the words of the agreement itself when they are clear, explicit and lead to no absurd consequences. LSA-C.C. arts. 1983, 2045 and 2046; Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La. 1982); Hood v. Ashby Partnership, 446 So.2d 1347 (La.App. 1st Cir.1984).
For a deed to be translative of title to real estate, it must contain such a description as to properly identify the property. Snelling v. Adair, 196 La. 624, 199 So. 782 (1940). However, if a portion of the description is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Agoff v. Boutte, 420 So.2d 1168 (La.App. 5th Cir.1982).
The 1915 partition agreement executed by Campbell, Vaughan and Slaughter contained a description adequate to properly identify the property to be conveyed to each party. While the partition agreement does refer to the W.B. Smith map filed in the partition suit, the description of each lot's boundaries contained within the partition agreement itself clearly excludes the railroad right of way from the partition. We find no merit in appellants' argument that such an interpretation leads to an absurd result.
Appellants contend that the trial court erred in not referring to the W.B. Smith map to determine the inclusion or exclusion of the right of way.
*764 It is undisputed that the original survey map prepared by W.B. Smith and filed by him in the partition suit was lost or misplaced from the Clerk of Court's records at some unknown time prior to initiation of these suits. At trial on the merits, appellants introduced over objection photographic reproductions of what they contend was the original W.B. Smith survey map. These reproductions, appellants argue, show that Smith physically included the right of way within Lot One, despite its acreage exclusion from the lot division obvious in his report or proces verbal.
As the reproductions lacked any form of certification by the Clerk of Court's Office that they were true copies of the original W.B. Smith map, they were not entitled to a statutory presumption of genuineness under LSA-R.S. 13:3727 et seq. However, there is no need to detail the conflicting testimony presented by both sides on the issue of whether the reproductions submitted are true depictions of the original W.B. Smith map or to determine whether the reproduction shows the right of way to be included in Lot One and therefore included in the partition. The boundary descriptions in the partition agreement, duly approved and homologated by the district court, clearly exclude the right of way from the partition, and there is no ambiguity or error in the descriptions which requires reference to the W.B. Smith map.
Citing Rock Island A. & L.R. Co. v. Guillory, 205 La. 141, 17 So.2d 13 (1943); Hendrick v. Texas and Pacific Railway Co., 212 So.2d 745 (La.App. 2d Cir.1968) and Green v. Chamberlain, 60 So.2d 120 (La.App. 1st Cir.1952), appellants argue that the phrase "less nine acres sold to railroad," employed in the original petition for partition and judgment ordering partition, must be interpreted as merely an acknowledgement of a servitude clearly shown in the conveyance records. We find the cited cases factually inapplicable to the present litigation.
For the foregoing reasons we affirm the judgment of the trial court in its entirety, with costs of this appeal assessed to appellants.
AFFIRMED.