509 So.2d 572 (1987)
Barry M. BORNE, Plaintiff-Appellee,
v.
Jon C. WILANDER, Defendant-Appellant.
No. 86-390.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
Michael H. Bercier, of Jones, Jones and Alexander, Cameron, for defendant-appellant.
Cecil Sanner, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
*573 DOMENGEAUX, Judge.
This is an appeal from a suit brought by the lessor of a residential dwelling seeking damages for the alleged breach of a contract of lease. At trial, he sought the rent allegedly due for the unexpired term of the lease, ten percent of that amount as a late payment penalty, additional damages for maintaining the premises, and attorney's fees and costs, all as provided in the lease agreement. The defendant-lessee answered the plaintiff's petition, alleging the premises were uninhabitable, and filed a reconventional demand seeking the return of his security deposit, damages and attorney's fees.
The trial court rendered judgment in favor of the lessor. He was awarded $812.90 as rent which accrued during the unexpired term of the lease, $81.29 as a 10% late payment penalty, $90.00 for trimming the bushes and shrubbery, and removing trash, $75.00 for yard work and $300.00 in attorney's fees, with interest on the entire amount from the date of judicial demand. The trial court declined the defendant's reconventional demand, holding that the lessee had abandoned the premises and was, therefore, not entitled to the return of his security deposit, damages or attorney's fees. It is from this decision that the defendant-lessee appeals.
Barry M. Borne, as lessor, and Jon C. Wilander, as lessee, entered into a contract of lease on March 2, 1984, for the lease of a residential dwelling located at 1413 W. Autumwood Lane, Lake Charles, Louisiana. The lease was to commence April 10, 1984, and terminate October 31, 1984. The monthly rental was $700.00.
The lessee took possession of the residence on April 10, 1984. Subsequent to taking possession, the lessee, on May 21, 1984, sought to take advantage of a specific provision of the lease entitling either party to terminate the lease upon 45 days notice by certified mail. The lessor received the lessee's notice on May 22, 1984, and responded by informing him that the 45 day period would expire on July 5, 1984.
The rent, as of the time the lessee gave notice, had been paid through May 31, 1984. Evidence adduced at trial established that no rent was paid for the period June 1, 1984 through July 5, 1984, and that the lessee vacated the premises on June 4, 1984.
The lease, in addition to the provisions heretofore addressed, further provided,
"... Failure to make payments on the date due and later than ten (10) days tereafter (sic) shall mean a late payment penalty of ten (10%) percent;"
"Lessee agrees to maintain the lawn and landscape frequently so that appearance will be neat and trimmed at all times;"
and
"In the event that either party is put to any expense in the involvement of the term or rental hereof after a default by the other, such innocent party may recover the amount of such expenses reasonably and legally incurred by curing such default, including attorney's fees."
Each of the above referenced contract provisions was intended to redefine the rights and obligations which exists between lessors and lessees as provided by Civil Code articles 2692 et seq. Since the Code articles defining the rights and obligations of lessors and lessees are not prohibitory laws unalterable by agreement, Borne and Wilander were entirely free to structure their agreement to suit their respective needs. Calderon v. Johnson, 453 So.2d 615 (La. App. 1st Cir.1984).
The decision of the trial judge in this case was correct. Wilander, the lessee, pursuant to the agreement to which he was a party is obligated for the rent due, the late payment penalty, damages for maintenance of the premises and attorney's fees.
The lessee, in defense of the plaintiff's position, alleged that the lessor had breached the obligations imposed upon all lessors by Civil Code art. 2692 and that he was, therefore, entitled to abrogate the lease. Article 2692 provides, in pertinent part,
"The lessor is bound from the very nature of the contract, and without any clause to that effect:

*574 (2) To maintain the thing in a condition such as to serve for the use for which it is hired."
The lessee alleged that the residence was uninhabitable and that the lessor had breached the implied covenant of Article 2692(2) by permitting the following conditions to exist:
1. The air conditioning system did not adequately cool the residence;
2. The farthest two-thirds of the rear yard retained water which smelled like sewerage and attracted crawfish;
3. The patio roof leaked; and
4. Two or three window screens were missing.
The trial judge, in oral reasons, expressed doubt as to the seriousness of the conditions alleged. The trial judge held that the conditions which did exist, considered individually and cumulatively, were not substantial enough to establish a breach of the obligation imposed by Article 2692. This Court cannot state that the trial judge was manifestly erroneous.
The Louisiana Constitution, Article 5, § 10, provides that the jurisdiction of an appellate court extends in all civil matters to law and facts. Absent "manifest error," however, it is not the province of this Court to substitute its determination for that of the trial judge. A reviewing court must give great weight to the factual conclusions of the trial court and when there is a conflict in the testimony, reasonable evaluations of testimony and reasonable inferences of fact should not be disturbed. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979); Canter v. Koehring Company, 283 So.2d 716 (La.1973); and Remn Const. Corp. v. Keating, 478 So.2d 207 (La. App. 3rd Cir.1985).
The allegations made by the lessee which this Court views as the lessee's most serious charge pertained to the inadequacy of the air conditioning system. A thorough review of the record reveals, however, that this allegation received only minimal attention. Testimony by the lessee and his wife was limited, general and conclusory. The testimony of the lessor rebutted that of the lessee and his wife.
The testimony regarding standing water in the rear yard, was, as was all the testimony, contradictory. The lessee and his wife stated that the farthest two-thirds of the rear yard retained water, smelled like sewerage, and was the nesting grounds for crawfish. The lessor acknowledged that following heavy rains the portion of the rear yard near the back fence would retain water but, that it would eventually drain. No evidence was brought forward to establish that the water was contaminated with sewerage.
The third condition which the lessee alleged rendered the residence uninhabitable was a leak in the patio roof. Mrs. Wilander testified that the leak was near the center of the patio and that water would "gush" through. Borne testified that the leak was only a minor drip.
The Second Circuit, in Robinson v. Mike McKean, Inc., 389 So.2d 451 (La.App. 2nd Cir.1980), was confronted with a situation similar to the instant case. The leaks in Robinson, however, were in the roof of an automobile dealership and permitted rainwater to enter the premises in both the office and maintenance areas. The Court of Appeal held that the evidence did not establish that the leaks were serious or that they seriously interfered with the lessee's business. The Court, further, held that the leaks did not render the premises uninhabitable, nor did they justify the lessee unilaterally abrogating the lease.
The leak in the instant case, which was of questionable size, existed only in the patio roof. The interior of the residence experienced no leaking. The trial judge correctly concluded that this leak did not render the premises unfit for its intended use. Cf. Freeman v. G.T.S. Corp., 363 So.2d 1247 (La.App. 4th Cir.1978).
The lessee's final allegation addressed missing window screens. The fact that two or three screens may have been missing, an allegation the lessor readily admitted, does not approach the level of unfitness necessary to establish a breach of Civil Code art. 2692.
*575 We now address the trial judge's decision regarding the status and disposition for the lessee's security deposit. The lessee sought, by way of reconvention, the return of his security deposit, damages and attorney's fees and prayed, in the alternative, that the security deposit be applied towards any judgment rendered against him. The trial judge correctly held for the lessor, denying all of the lessee's demands.
The lessee relied upon La.R.S. 9:3251, et seq. as authority in seeking the return of his security deposit. La.R.S. 9:3251(A) obligates the lessor to return to the lessee, within one month of the termination of the lease, the entire security deposit or provide the lessee with an itemized statement accounting for any unreturned portion of the deposit. The lessee, however, has overlooked subsection (C). La.R.S. 9:3251(C), which must be read in conjunction with subsection (A), provides,
"Paragraph A of this Section shall not apply when the tenant abandons the premises, either without giving notice as required or prior to the termination of the lease." (Emphasis added).
The issue of abandonment of leased premises in the context of the lessor's obligation to return the security deposit arose in Curtis v. Katz, 349 So.2d 362 (La.App. 4th Cir.1977), writ denied, 351 So.2d 179 (La.1977). The Curtis Court, quoting Salim v. Louisiana State Board of Education, 289 So.2d 554 (La.App. 3rd Cir. 1974) held,
"* * * `Abandonment' of property or of a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession and control, and without vesting ownership in any other person." Curtis, supra, at 363.
The evidence established that Wilander vacated the W. Autumwood Lane residence at his own behest with the intention of terminating his interest in the property. The trial judge was, therefore, correct in concluding that Wilander had abandoned the tenancy.
Having concluded that Wilander abandoned the premises, this Court must also conclude that he is not entitled to the return of his security deposit. Pursuant to the dictates of La.R.S. 9:3251(C), on June 4, 1984, the date on which Wilander vacated the premises, he forfeited any and all rights to the security deposit. Hood v. Ashby Partnership, 446 So.2d 1347 (La. App. 1st Cir.1984). Wilander, for the same reason that he has no right to the return of the security deposit, has no right to have it applied towards the judgment.
It is not necessary for this Court to address the question of whether Wilander provided Borne with a forwarding address for the return of the security deposit as required by La.R.S. 9:3251. Having concluded that Wilander is not entitled to the return of his security deposit, that question is not at issue.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed. All costs, both in this Court and in the trial court, are assessed against the defendant-appellant.
AFFIRMED.