STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

FERRIS BONNET

VERSUS

LAFAYETTE PARISH SHERIFF'S OFFICE, ET AL.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2007-2529
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

SHANNON J. GREMILLION
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

AFFIRMED; MOTION TO SUPPLEMENT AND AMEND THE RECORD GRANTED.

Katherine A. Theunissen
Mahtook & Lafleur
P. O. Box 3089
Lafayette, LA 70502
(337) 266-2189
Counsel for Defendants/Appellees:
Lafayette Parish Sheriff's Office
Michael J. Neustrom, Lafayette Parish Sheriff

Joslyn Renee Alex
Attorney at Law
P. O. Box 126
Breaux Bridge, LA 70517
(337) 332-1180
Counsel for Plaintiff/Appellant:
Ferris Bonnet

**GREMILLION, Judge.**

The children of the original plaintiff in this case, Ferris Bonnet, appeal the judgment in favor of the defendants, the Lafayette Parish Sherriff's Department and Michael J. Neustrom, in his capacity as Sherriff (collectively LPSD), finding them not liable for Bonnet's injuries during his incarceration. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Bonnet was arrested on May 31, 2006 and taken to the Lafayette Parish jail. On June 1, 2006, Bonnet indicated to the staff that he was suicidal, and he was placed in an isolation cell that receives constant monitoring. He was experiencing alcohol withdrawal and was given a number of medications to assist with the symptoms. On June 3, 2006, Bonnet was still receiving medication for withdrawal symptoms. LPSD staff noted that he fell several times and was eventually placed on his bunk by deputies. He fell again and alleges that he was not properly monitored throughout the day leading to his injuries.

At 7:30 p.m. on June 3, 2006, a nurse indicated that Bonnet needed to be taken to the hospital. There, Bonnet claims he was left and the University Medical Center (UMC) staff was not given any information about his condition. Bonnet admitted he was in no condition to convey what was wrong with him due to his alcohol withdrawal and psychosis. On June 4, 2006, UMC staff determined that Bonnet had suffered from intertrochanteric fracture of the right femur, and surgery was performed. Bonnet remained in the hospital until June 20, 2006. Upon his release he was sent to a nursing home.

Bonnet filed suit against LPSD. LPSD filed a motion for summary judgment, which was granted. A panel of this court affirmed the trial court, but the supreme court granted writs, finding that there were genuine issues of material fact

1

precluding summary judgment.[1] The case was remanded for further proceedings. Bonnet died in May 2009.[2]

In September 2010, LPSD filed a motion to strike expert witness, arguing that plaintiffs' counsel had twice failed to comply with the expert report deadline. Following the plaintiffs' two-day presentation of evidence before the trial court in December 2010, LPSD moved for a directed verdict, which was granted in favor of LPSD.[3]

The plaintiffs now appeal and assign as error:

1. The trial court's grant of a directed verdict when the evidence presented at trial proved LPSD's negligence.

2. The trial court erred in allowing the defense to object to evidence previously accepted into evidence.

LPSD filed a motion to supplement and amend the record which was referred to this panel on the merits and is hereby granted.[4]

## INVOLUNTARY DISMISSAL

Louisiana Code of Civil Procedure Article 1672(B) states;

---

[1] *See Bonnet v. Lafayette Parish Sheriff*, 08-905 (La.App. 3 Cir. 2/4/09), 2 So.3d 1280, *writ granted, Bonnet v. Lafayette Parish Sheriff,* 09-0490 (La. 4/24/09), 7 So.3d 1202.

[2] In June 2009, Mandisha Bonnet, Sherece Bonnet Pinnock and Succession of Ferris Bonnet were substituted as plaintiffs. Defendants filed an Exception of No Right of Action, which was granted in January 2010 as to the Succession of Ferrris Bonnet. The petition was later amended to substitute Bonnet's other children, Jaleen Bonnet Jospeh, Quinton Berard, Kasheam Fuller, Ferris Bonnet, and Deon Keys. There were extensive procedural maneuvers at the trial level regarding these children, which are not at issue here. At trial, the children who remained as plaintiffs were Mandisha Bonnet, pro se, Quinton Berard, pro se, and although it is not completely clear, it appears that Jaleen Joseph and Ferris Andrew Bonnet were represented by counsel. Berard did not return for the second of day of trial. Neither Bonnet nor Berard filed appeals, and the judgment dismissing their claims is final.

[3] LPSD erroneously moved for a directed verdict, and plaintiffs continuously refer to the trial court's judgment as a directed verdict rather than an involuntary dismissal. This matter was tried before the trial court and is subject to involuntary dismissal under La.Code Civ.P. art. 1672(B), as opposed to a directed verdict under La.Code Civ.P. art. 1810, which is available in jury trials. *See Basic Home Care Servs., Inc. v. Dore*, 06-1036 (La.App. 3 Cir. 12/6/06), 945 So.2d 861.

[4] The appellate record incorrectly denotes that defendants' exhibits 35 and 36 were proffered when, in fact, they were admitted into evidence. This appears to be a technical error because these exhibits were admitted in evidence before the trial court. We, therefore, grant defendants' motion to supplement and amend the record to reflect that Exhibits 35 and 36 are part of the appellate record.

In an action tried by the court without a jury, after the plaintiff has completed presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

The court court's vast discretion in granting a motion for involuntary dismissal is reviewed under the manifest error standard. *Guidry v. City of Rayne Police Dep't.*, 09-664 (La.App. 3 Cir. 12/9/09), 26 So.3d 900; *Gold, Weems, Sues & Rundell v. Granger*, 06-859 (La.App. 3 Cir. 12/29/06), 947 So.2d 835, *writ denied*, 07-421 (La. 4/27/07), 955 So.2d 687. Negligence claims under Louisiana law are subject to the duty-risk analysis, which requires a breach of a duty that was the cause-in-fact of the plaintiff's injuries, resulting in damages. *See Jones v. Centerpoint Energy Entex*, 11-0002 (La.App. 3 Cir. 5/25/11), 66 So.3d 539. Failure to prove any element results in a finding of no liability. *Id.*

Plaintiffs presented the following evidence. Vergie Bonnet, Ferris's sister, testified that she saw him at about 4:00 a.m. the morning that he was arrested. She said he could walk and was not injured, and that he did not indicate that he fell off of a bicycle the morning of the incident. She said that on June 13, she visited Bonnet in the hospital where he was restrained. She said she learned that he had a fractured hip.

William Keith Lattimore of the LPSD testified that he works in the warrants division. He arrested Ferris, locating him in the metal shed behind Vergie's house. Lattimore testified that he did not aid Bonnet in walking to the police car, and Bonnet did not use a cane for assistance. Lattimore took Bonnet to the Lafayette Parish Correctional Center where he was booked. Lattimore said that Bonnet did not present any medical issues at the time that would require him to be brought to the medical center for clearance.

Rebecca Fruge testified that she was employed as a licensed practical nurse at the Lafayette Parish Correctional Center when Bonnet was booked. She said that she arrived on the scene because Bonnet reported on his Intake Screening Questionnaire that he had high blood pressure, which requires an initial assessment. Fruge said that he did not complain of injury and that she did not observe any injuries. Fruge testified that she monitored his blood pressure, which was normal, and that Bonnet reported having hepatitis C.

Raisa Martinez testified she was employed by the LPSO as a deputy and monitored Bonnet via a camera during his incarceration while he was in a holding cell in the medical department for continuous watch because he threatened to kill himself. Martinez's log observation began June 2, 2006 at 10:26 p.m. with notations being made every ten to fifteen minutes.[5] Her log indicates that Bonnet stood at the door, walked around the cell, laid on his bunk, slept on his bunk, or sat on his bunk until her departure at 6:00 a.m. the following morning. She described Bonnet as being "just fine." She noted no problems with his ability to walk, stand, or sit.

Martinez next observed Bonnet on June 3, 2006 beginning at 6:11 p.m. She noted six times that he was lying on the floor. Martinez stated that it is not unusual for some inmates to lie on the floor. At 9:30 p.m. she noted:

> "I/M [Inmate] fell backwards against the bunk. He is now sitting on the floor. Nurse Marla was advised, and she took a look @ inmate. Advised inmate looked worse than earlier, & she will send inmate to UMC.

At 10:06 p.m. Bonnet was taken to UMC.

Lawrence Williams testified that he was employed as a Deputy at the LPSO and conducted camera observation of Bonnet during the time that Martinez was off. He began observing Bonnet in the early morning of June 3, 2006 at 6:20 a.m.

---

[5] Military time was used in the observation log which we have converted.

4

through 5:45 p.m. He noted Bonnet was either sleeping in his bunk, standing in the cell or moving around the cell until 5:00 p.m. when he noted that "I/M fell because of withdrawal." Thereafter, he noted that Bonnet "fell to the floor" at 6:15, "fell hit head on toilet" at 6:25, was placed on his bunk at 6:40, remained on his bunk at 6:50, fell off of his bunk at 7:00, and remained on the floor until 7:45 when Williams' shift ended. Williams testified that he did not call for medical assistance during his shift. He testified that he did not observe anything that would have required medical attention. Williams said he had only been on the job for a few days at the time of this incident, but that he worked under the supervision of another deputy at the time.

Marla Landry, a part-time licensed practical nurse at the correctional center, who has been a nurse for twenty-five years, testified that she started the alcohol detox of Bonnet on the morning of June 3 because Bonnet's blood pressure was rising and Bonnet had told her that he drank a lot. She noted that his blood pressure was normal on June 1 and June 2, but on June 3, it had gone up to 148/95. She said that he was given thiamine, mag sulfate, and Valium. She testified that by the evening, having been informed that he had fallen, she decided that Bonnet needed to go to the hospital. Landry testified that not all inmates who fall are automatically taken to the hospital. She said that alcohol detoxification occurs frequently at the prison. Landry testified that nursing staff administered medicine to him at 12:00 and 4:00 p.m. on June 3. She said that nursing staff would assess how the inmate was handling the detox at the time the medicine was dispensed.

Landry then went over the "Inmate Referral Form" she completed, in which she indicated that Bonnet had a history of alcohol abuse and that Bonnet needed to be detoxed on several occasions. She noted he was on critical watch due to the suicide threat. It then states that "VS [vital signs] were ok yet he was talking inappropriately–this pm he is shaking and with more inappropriate behavior.

5

Please eval." Landry noted no injuries; she said that Bonnet did not complain of any injuries. Landry said that if Bonnet had a physical cut, scrape, bruise, or other physical sign of injury, it would have been noted and treated prior to sending him to UMC.

Jolene Ann Bonnet Joseph, Bonnet's daughter, testified that she and her father were estranged. She said she visited her father while he was in the nursing home following his surgery and that he complained of hip pain following the surgery. She said that she had last seen him a year prior to the incident in question.

Mandisha Bonnet stated that prior to his incarceration, her father had not complained of having a fractured a hip. Ferris Bonnet, who was five years old when he last saw his father, provided no useful testimony. Plaintiffs' counsel then rested.

UMC medical records indicate that on June 3, Bonnet was "noticed to have a poor orientation with person, place, and situation." He complained of weight loss, cough, and history of depression. His final diagnosis was "1. Status post delirium tremens with alcohol abuse" and "2. Right intertrochanteric fracture." The doctor's report dated June 4, 2006 states that "patient claims he has right hip pain after he fell off of his bike 3 days ago. He has not been able to walk & claimed he fell up to 10 times yesterday." The surgeon's notes indicate that "Mr. Bonnet is a 55-year-old male with a history of alcoholism who three days prior to admission had a fall on his bike. He was admitted for delirium tremens and orthopedics was consulted approximately three days after the injury. X-rays revealed right intertrochanteric femur fracture."

Plaintiffs submitted the report of Dr. Michael Rorback, an orthopedic surgeon from Connecticut, who concluded that Bonnet "could not have ambulated with a comminuted intertrochanteric fracture of the right femur. In summary, Mr. Bonnet's comminuted, intertrochanteric right femur fracture occurred during the

6

time he was incarcerated on 6/3/06." Defendant's expert was Dr. Kim LeBlanc, who is board certified in family and sports medicine and is the Department Chairman of Family Medicine at LSU School of Medicine. He has also been the medical director of Lafayette Parish Correctional Center since 1999. Dr. LeBlanc testified that there was no way of knowing when Bonnet fractured his hip. He said it was significant that Bonnet was noted as kneeling on the floor at 7:27 p.m. on June 3, because a person with a fractured hip would not be able to kneel. Dr. LeBlanc further testified that it would be possible for Bonnet to have had a partial fracture from falling off of his bike prior to entering jail that was not made apparent until the fracture was complete. Ultimately, though, Dr. LeBlanc testified that he could not say with any certainty when the hip fracture occurred.

In ruling on the motion for involuntary dismissal, the trial court stated:

> [T]he biggest problem I have is knowing when this injury occurred. I'll tell you that it's very confusing to me, after hearing what I've heard that his complaints at the hospital of the hip wasn't until the next day, according to the medical records, in which time he x-rayed him and – the fact that the medical personnel at the jail never sought or looked at any hip problem when they did recover him off the floor, they were more concerned with his detox. And so, from the evidence I've seen, I haven't seen anything to indicate that he even hurt himself by falling on the floor. I know we're extrapolating or jumping from A to B that he got hurt by falling on the floor. And he very well may have been hurt, but he didn't complain of it, which is—I wish he was here to clarify that for me, because you know, I know the medical personnel, she seemed quite sincere that if she would have noticed a problem, I think she would have dealt with it, and he didn't complain of it. He didn't complain when he got to UMC of a hip problem or they would have x-rayed him, and that didn't take place until the next afternoon. And so, what concerns me to start with is maybe something happened at the hospital that could have caused me a problem, you know. I mean, the deputy testified he fell over the – Ms. Martinez testified that he fell over backwards is when she noticed and went in to help him. Evidently he was trying to get up, but we don't know how badly he was hurt at that point. There's just really no evidence. And the plaintiff bears the burden of proof. And so the first problem is to say that this injury was caused by the negligence of the jail or an intentional tort of the jail by them not caring for him properly. And I don't know that that's where the injury occurred. So, and the plaintiff failing to carry their burden of proof on that, the causation issues. The failure to provide

7

medical treatment, again, I think they did what they thought – they tried to treat his problem as it occurred. Now, we can back up to the point where when they saw him fall the first time, they should have called the medics, and the medics should have brought him to the hospital right away, but we don't know that that's where he got injured, you know. And you have to look at it – I want the family to understand that I'm looking at it – the plaintiff does carry the burden of proof, and, you know, it's not to take away from the seriousness of the situation, but we don't know that that's where he got hurt. If he was here to testify, that might be different, And, you know, what concerns me is he continued to report, maybe did hurt himself on a bike and then re-hurt himself even worse when he fell the last time in the jail. But I would just be guessing or – there's no evidence to support that, so I am going to rule in favor of the defendant and dismiss the plaintiff's claim.

Having reviewed the evidence and the trial court's reasoning, we find no manifest error in the trial court's grant of an involuntary dismissal in favor of LPSD. Reasonable people could find that the plaintiffs failed to prove a fundamental facet of their case, namely that LPSD's actions or inactions were a cause-in-fact of Bonnet's hip fracture. The trial court's finding that the cause of Bonnet's hip injury simply cannot be determined from the evidence submitted by plaintiffs is reasonable. Jail personnel, including the nurse who examined him at 7:30 p.m. on June 3, 2006, reported no injuries to Bonnet. Bonnet's UMC intake sheet indicated that his referral to the hospital was related to his alcohol detoxification. Bonnet reported falling from a bicycle. The trial court had a reasonable basis upon which to base its grant of involuntary dismissal in favor of the defendants. Accordingly, this assignment of error is without merit.

## EVIDENCE

In their second assignment of error, the plaintiffs argue LPSD did not object to the admission of an expert's report that the trial court later allowed to be withdrawn. In fact, the record shows that the plaintiffs' report of Dr. Sheron Steward was admitted with the understanding that Dr. Steward would be testifying the next day at trial. Dr. Steward never appeared, and the trial court declined to admit her report. The issues that Dr. Steward would be testifying to–breach of a

8

duty by LPSD–were not relevant to the trial court's finding of lack of proof of causation. Further, LPSD agreed to withdraw its expert reports rebutting that issue. Because we have found no error in the trial court's finding that plaintiffs would be unable to prove causation, this issue is rendered moot.

## CONCLUSION

The trial court's judgment granting an involuntary dismissal in favor of the defendants-appellees, Lafayette Parish Sheriff's Department and Michael Neustrom in his capacity as Sheriff, is affirmed. LPSD's motion to supplement and amend the record is granted. All costs of this appeal are assessed against the plaintiffs-appellants.

**AFFIRMED, MOTION TO SUPPLEMENT AND AMEND RECORD GRANTED.**