# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 12-244


**DEREK PAGE**

**VERSUS**

**H. COOKIE BENSON, ET AL.**


**\*\*\*\*\*\*\*\*\*\***

## APPEAL FROM THE
### FIFTEENTH JUDICIAL DISTRICT COURT
### PARISH OF LAFAYETTE, NO. C-2009-4470
### HONORABLE EDWARD B. BROUSSARD, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ELIZABETH A. PICKETT
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Elizabeth A. Pickett, and James T. Genovese, Judges.


**REVERSED IN PART; AFFIRMED IN PART;
AND REMANDED.**


**John Paul Charbonnet**
**Glenn J. Armentor**
**The Glenn Armentor Law Corporation**
**300 Stewart St.**
**Lafayette, LA 70501**
**(337) 233-1471**
**COUNSEL FOR PLAINTIFF-APPELLANT:**
     **Derek Page**

**K. Wade Trahan**
**Valerie Guidry**
**Ottinger, Hebert, L.L.C.**
**P. O. Drawer 52606**
**Lafayette, LA 70505-2606**
**(337) 232-2606**
**COUNSEL FOR DEFENDANTS-APPELLEES:**
     **Sterling Grove Housing Development**
     **C. S. Management, Inc.**
     **Bobby Benson**
     **H. Cookie Benson**
     **Monica Roger**

**PICKETT, Judge.**

Former tenant appeals the dismissal of all but one of his claims against the defendants and the striking of his memorandum opposing summary judgment. For the following reasons, we reverse in part, affirm in part, and remand.

**FACTS**

In July 2008, Derek Page leased an apartment from the Sterling Grove Housing Development, Inc. d/b/a Ed Washington Place Apartments (the Apartments) for the period November 2008 to May 2009. Two months after vacating his apartment, he filed suit against the Apartments, C.S. Management, Inc., the management company that managed the Apartments, and Cookie Benson, Bobby Benson, and Monica Roger, employees of C.S. Management, Inc. who worked at the Apartments (collectively referred to as the defendants), asserting a number of claims he alleged arose out of requests that his toilet be repaired.

The Apartments is a housing development that rents to disabled and elderly tenants. Mr. Page is physically disabled as a result of Frederix's Ataxia. As a result of this disorder, he is wheelchair-bound, and his communication skills are limited. He is assisted by a caregiver, Tina Richard. In his petition, Mr. Page alleged: (1) the toilet in his apartment was unstable; (2) the defendants' attempts to repair the toilet were unsuccessful; (3) he was treated badly by the defendants because he continued to request that the toilet be repaired; (4) he suffered serious anxiety and physical illness; and (5) the defendants' failed attempts to repair the toilet and refusal to heed his warning as to an attempted repair resulted in him falling and injuring himself. He further alleged the relationship among Cookie Benson and Bobby Benson, who are husband wife, and Monica Roger, who is their daughter, with no third-party monitoring or safeguards available to the elderly and

disabled tenants the defendants served, constituted negligence on the part of the Apartments and C.S. Management, Inc. that allowed these individuals to torment and abuse him.

In January 2010, the defendants deposed Mr. Page, Ms. Richard, and Scott Richard, Ms. Richard's husband.  Then, on March 3, 2011, the defendants filed a motion for summary judgment and requested a hearing on the motion be set for May 9, 2011.  Counsel for Mr. Page contacted defense counsel on May 2, 2011, requesting the hearing be rescheduled for May 12, 2011.  Defense counsel agreed to reschedule the hearing but objected to Mr. Page filing any responsive pleadings or opposition memorandum because the continuance request was made less than eight days before the hearing.  On May 11, 2011, Mr. Page filed an opposition to the motion for summary judgment and delivered a copy of it to defense counsel. The defendants filed a motion to strike Mr. Page's opposition because it was not filed within the time period provided in La.Code Civ.P art. 966 and Uniform District Court Rule 9.9(B).

At the hearing on the motion, the trial court granted the motion to strike but allowed counsel for Mr. Page to argue the merits of the motion.  At the conclusion of the hearing, the trial court granted summary judgment in favor of the defendants.  Mr. Page filed this appeal.

## ASSIGNMENTS OF ERROR

Mr. Page assigns two errors in his appeal:

(1)     The trial court erred by granting the defendants' motion to strike his opposition to their motion for summary judgment, notwithstanding the fact that it was not timely filed, and

(2)     The trial court erred by granting the defendants' motion for summary judgment and dismissing the majority of the claims he asserted in his petition.

2

## MOTION TO STRIKE

Mr. Page urges the trial court erred in striking his opposition for a number of reasons. Central to his arguments are La.Code Civ.P. art. 966(B) and Uniform Rule of District Court 9.9. Subsection (B) of Article 966 provides, in pertinent part:

> The motion for summary judgment, memorandum in support thereof, and supporting affidavits shall be served within the time limits provided in District Court Rule 9.9. For good cause, the court shall give the adverse party additional time to file a response, including opposing affidavits or depositions. The adverse party may serve opposing affidavits, and if such opposing affidavits are served, the opposing affidavits and any memorandum in support thereof shall be served pursuant to Article 1313 within the time limits provided in District Court Rule 9.9.

Rule 9.9 of the Uniform District Court Rules provides, in pertinent part:

> (b) A party who opposes an exception or motion shall concurrently furnish the trial judge and serve on all other parties an opposition memorandum at least eight calendar days before the scheduled hearing. The opposition memorandum shall be served on all other parties so that it is received by the other parties at least eight calendar days before the hearing, unless the court sets a shorter time.
>
> . . . .
>
> (d) Parties who fail to comply with paragraphs (a) and (b) of this Rule may forfeit the privilege of oral argument. If a party fails to timely serve a memorandum, thus necessitating a continuance to give the opposing side a fair chance to respond, the court may order the late-filing party to pay the opposing side's costs incurred on account of the untimeliness.

Mr. Page first argues the trial court acted unlawfully when it struck his opposition because Rule 9.9 does not permit a trial court to strike an adverse party's opposition to a motion for summary judgment. He contends Rule 9.9 provides a trial court only two options when an opposition has not been timely filed: (1) deny oral argument and/or (2) continue the hearing. Mr. Page has not cited any cases in support of his position. Rather, he asserts the rule of statutory

3

construction which provides when the legislature specifies only two consequences for failure to comply with a statute, no other consequence is available for noncompliance prohibits the consequence of striking of an untimely filed opposition. Mr. Page next urges a client should not be sanctioned for a delay that was not his fault but the result of his attorney being distracted by personal matters. Additionally, he asserts the late filing of his opposition did not prejudice the defendants because having deposed Mr. Page and Mr. and Mrs. Richard, they knew what the substance of his opposition would more likely than not be. Lastly, he argues the defendants "opened the door" to allowing the opposition in their oral argument at the hearing on the motion for summary judgment.

The supreme court has not specifically addressed these arguments but has held an appellate court erred in considering a memorandum and affidavit opposing a motion for summary judgment that were filed shortly before the hearing on the motion. The court explained, "[t]he time limitation established by La.C.C.P art. 966 (B) for the serving of affidavits in opposition to a motion for summary judgment is *mandatory*; affidavits not timely filed can be ruled inadmissible and properly excluded by the trial court." *Buggage v. Volks Constructors*, 06-175 (La. 5/5/06), 928 So.2d 536 (emphasis added). This holding clearly indicates the trial court has the discretion to allow or not allow late-filed affidavits.

In line with *Buggage*, the supreme court reinstated the trial court's decision in *Guillory v. Chapman*, 10-1370 (La. 9/24/10), 44 So.3d 272, to follow the mandatory language of Article 966(B) and disallow a late-filed affidavit. This court determined in *Phillips v. Lafayette Parish School Board*, 10-373 (La.App. 3 Cir. 12/8/10), 54 So.3d 739, the trial court did not abuse its discretion in striking an opposition that was not filed eight days before the hearing on a motion for

4

summary judgment. Conversely, in *Dupree v. Louisiana Medical Mutual Insurance Co.*, 11-366 (La.App. 3 Cir. 10/5/11), 74 So.3d 880, *writ denied*, 11-2453 (La. 5/25/12), 89 So.3d 1175, another panel of this court determined the trial court erred in refusing to grant a motion for new trial in favor of plaintiffs whose suit had been dismissed on summary judgment for failing to present an expert's opinion opposing summary judgment. The panel concluded the plaintiffs should have been granted a new trial in order to submit an expert's opinion because: (1) they had moved the litigation along quickly before the motion was filed; (2) more than eight days before the hearing, they requested, but were denied, a ten-day extension in order to obtain an affidavit from an expert; and (3) a scheduling order issued by the trial court provided a date after the hearing on the motion for summary judgment for the filing of expert witness affidavits. The panel recognized its decision may be construed as being out of line with existing jurisprudence and, therefore, explained:

> We by no means intend to condone or legitimize the actions of plaintiffs' counsel in failing to timely file an expert affidavit. We reach our decision herein after careful consideration of the facts, the law, and the procedural record before us. Rare is the case where we find an abuse of the trial court's great discretion. This instance is indeed one of rarity.

*Id*. at 883.

No facts similar to those in *Dupree* that were found to warrant a new trial on the motion for summary judgment are present here. Mr. Page filed suit in July 2009. The defendants deposed Mr. Page and the Richards in January 2010 and propounded written discovery. Mr. Page has not refuted defense counsel's representation that the only discovery he conducted was included with his original petition. Additionally, the hearing on the motion was set sixty days after the

5

motion was filed, and Mr. Page did not seek a continuance of the hearing until seven days before the hearing. While his counsel asserts he was in New Orleans with a sick family member the day of the hearing, he does not explain why he failed to seek a continuance earlier. Under these facts, Mr. Page being prejudiced by his counsel's actions is insufficient to establish the trial court abused its discretion in granting the defendants' motion to strike.

## SUMMARY JUDGMENT

Appellate courts review summary judgments de novo, using the same criteria applied by the trial courts to determine whether summary judgment is appropriate. *La. Safety Ass'n of Timbermen-Self Insurers Fund v. La. Ins. Guar. Ass'n*, 09-23 (La. 6/26/09), 17 So.3d 350. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). Summary judgment is favored and shall be construed "to secure the just, speedy, and inexpensive determination of every action." La.Code Civ.P. art. 966(A)(2).

The initial burden of proof is on the movant to show that no genuine issue of material fact exists. La.Code Civ.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial, he need "not negate all essential elements of the adverse party's claim," but he must show "there is an absence of factual support for one or more elements essential [to the] claim." *Id*. Once the movant has met his initial burden of proof, the burden shifts to the adverse party "to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial." *Id*.

6

In his petition, Mr. Page alleged several causes of action against the defendants: (1) breach of obligation to provide him peaceable possession of his apartment; (2) negligent maintenance of the premises; (3) intentional, reckless, and negligent infliction of emotional distress upon him; (4) tortious interference in his relationship with Ms. Richard; (5) negligent maintenance of their management team; (6) negligent failure to maintain oversight of the premises. He also asserted Mr. Benson committed an assault and battery on him. He sought damages for physical injuries; mental anguish; medical expenses; physical pain and suffering; loss of enjoyment of life; medical expenses; moving expenses; increased living expenses; and inconvenience.

The defendants filed a motion for summary judgment seeking dismissal of all Mr. Page's claims, except his claim against Mr. Benson for assault and battery. At the conclusion of the hearing on the motion, the trial court granted summary judgment as requested by the defendants, and a judgment was signed May 19, 2011.

### Peaceable Possession

Mr. Page urges the defendants failed to show they are entitled to summary judgment with regard to his claim that they disturbed his peaceable possession of his apartment. He contends the defendants failed to maintain him in peaceable possession in numerous ways, one being "some of the defendants entered his apartment uninvited and without his knowledge." In their answer, the defendants admitted Mr. Benson entered the apartment to repair the toilet after announcing his arrival but denied the remaining allegations. Mr. Benson and Ms. Roger stated in their affidavits that they entered Mr. Page's apartment in response to his repair

7

requests but did not state they notified Mr. Page of their intent to enter the apartment and obtained his consent to do so.

Paragraph 20 of the Lease[1] provides:

> The Landlord agrees to enter the apartment only during reasonable hours, to provide reasonable advance notice of his intent to enter the apartment, and to enter the apartment only after receiving [his] consent to do so, except when emergency situations make such notice impossible or except under paragraph (c) below.

The exception in paragraph (c) applies when a lessee vacates the premises before the lease term expires. That is not the situation here, and no emergency has been shown to have existed on those occasions when the defendants entered Mr. Page's apartment without first notifying him of their intent to do so.

The defendants argue they did not breach this warranty because they also had an obligation to maintain the premises and to make necessary repairs with reasonable promptness. They have not shown the obligation to repair with reasonable promptness supercedes their obligation to give Mr. Page notice of their intent to enter his apartment. Nor have they shown the obligation to repair with reasonable promptness *and* the obligation to give notice and obtain consent could not be satisfied simultaneously. *Equen v. Gernon*, 1 Teiss. 84 (La.App. Orl. 1904), cited by the defendants does not support their position. In *Equen*, the tenant refused to allow the lessor and his repairmen entry into the leased premises to make the needed repairs. The defendants do not contend Mr. Page refused the defendants entry to make repairs. Accordingly, the defendants have not shown they were entitled to summary judgment dismissing Mr. Page's claim that they breached their obligation to maintain him in peaceable possession of his apartment.

---

[1] The defendants attached a copy of the Lease to their Memorandum in support of Motion for Summary Judgment.

*Maintenance of the Premises*

Mr. Page also claims that because the defendants' initial attempts to repair his toilet were unsuccessful, they were negligent in fulfilling their obligation to maintain the premises. He asserts he contacted a congressman for assistance which resulted in the toilet being replaced; therefore, he concludes the defendants' failure to replace the toilet sooner shows they were negligent in maintaining the premises.

Louisiana Civil Code Article 2691 provides lessors must "make all repairs that become necessary to maintain the thing in a condition suitable for the purpose for which it was leased, except those for which the lessee is responsible."

In support of their motion for summary judgment, the defendants produced records showing from November 17, 2008 through April 19, 2009, Mr. Page made six repair requests, five of which concerned his toilet. Ms. Roger attested in her affidavit she received Mr. Page's service requests on dates that correspond with the dates appearing on the service requests. Additionally, Mr. Benson attested in his affidavit that every service request he received was addressed "on the day of receipt."

The defendants argue that their attempts to repair the toilet were not unsuccessful and that the continued problems with the toilet were due to Mr. Page's manner of accessing the toilet which caused it to become unstable. Citing two cases, they contend Mr. Page's complaints are insufficient to satisfy his burden of proof. In both cases cited, the suits were filed by lessors for breach of contract and past due rent, and the lessees argued in defense of the lessors' claims that the lessors' failure to maintain the leased premises justified their termination of the leases and vacating the premises.

In *Borne v. Wilander*, 509 So.2d 572 (La.App. 3 Cir. 1987), this court doubted the seriousness of the lessees' complaints: inadequacy of the air conditioning, ponding of water in the yard that smelled like a sewer, a leak on the patio, and three missing window screens. The court observed the lessees' evidence concerning the air conditioning was limited and conclusory. Additionally, the court pointed out that while the lessor admitted a portion of the yard retained water after heavy rains, he explained it would eventually drain. The court found no merit in the lessees' defenses because these problems "did not render the premises unfit for its intended use." *Id.* at 574.

In *Robinson v. Mike McKean, Inc.*, 389 So.2d 451 (La.App. 2 Cir. 1980), the court determined leaks in offices and maintenance areas of a car dealership that did not fully prohibit use or habitation of the offices did not justify the lessee's unilateral abrogation of the lease and vacation of the premises.

The maintenance records produced by the defendants for repairs requested and made on the same date, i.e., January 15, March 11, and March 24, 2009, show no complaints were received immediately after each repair to Mr. Page's toilet, and Mr. Page has not submitted evidence that contradicts those records. Therefore, Mr. Page has failed to show a genuine issue of material fact exists as to whether the defendants were negligent for failing to maintain his apartment with regard to repairs requested on those dates.

The repair request Mr. Page made April 8 was not resolved until April 9, due to a conflict between Mr. Page and Mr. Benson that resulted in the police being called and Mr. Benson leaving Mr. Page's apartment. On April 9, the defendants contracted with a plumber to make the repairs, and he repaired the toilet that date.

Mr. Page's last complaint was made April 19. Mr. Page asserted in his petition that he informed Mr. Benson during this repair attempt that an apparatus Mr. Benson intended to install on the toilet would not resolve the problems Mr. Page experienced with the toilet. Although Mr. Page explained a similar apparatus that had been installed on the toilet in a previous residence and had failed, Mr. Benson installed the apparatus anyway, and Mr. Page was allegedly injured when the apparatus Mr. Benson installed failed. The defendants admitted Mr. Page told Mr. Benson the apparatus had been tried in an earlier residence without success but did address Mr. Page's allegations on this issue in their affidavits.

We conclude the lack of a working toilet would render an apartment not fit for its intended purpose. Additionally, there is a genuine issue of material fact as to whether the defendants' installation of the apparatus on Mr. Page's toilet that failed and caused him to be injured rendered the apartment uninhabitable or not fit for its intended purpose. For these reasons, the defendants have not established they were not negligent in maintaining the premises of Mr. Page's apartment, and they are not entitled to summary judgment with regard to this claim.

### Intentional Infliction of Emotional Distress

Mr. Page asserted in his petition the defendants intentionally, recklessly, and negligently inflicted emotional distress on him. To recover for intentional infliction of emotional distress, a plaintiff must prove: (1) the conduct of the defendant was extreme and outrageous; (2) he suffered severe emotional distress; and (3) the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205 (La.1991).

11

The court reviewed the elements of intentional infliction of emotional distress, explaining: "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. at 1209. Conduct that is simply tortious or illegal does not rise to the level of extreme and outrageous. *Nicholas v. Allstate Ins. Co.*, 99-2522 (La. 8/31/00), 765 So.2d 1017. Accordingly, a defendant cannot be held liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *White*, 585 So.2d at 1209. Rather, "[t]he distress suffered must be such that no reasonable person could be expected to endure it." *Id*. at 1210.

In brief, Mr. Page argues the defendants' actions, when considered in light of his being disabled and needing assistance from a caregiver, are sufficient to satisfy his burden of proof. Mr. Page's petition does not set forth conduct that is outrageous, extreme, or atrocious. Importantly, his allegations do not show the defendants desired to inflict severe emotional distress or knew their conduct would cause him such distress. Thus, we conclude the defendants carried their initial summary judgment burden on this claim. Without evidence countering the defendants' position, Mr. Page has failed to show a genuine issue of material fact exists; therefore, summary judgment was properly granted.

### Negligent Infliction of Emotional Distress

Mr. Page also asserts a claim for the negligent infliction of emotional distress. He alleges the defendants' conduct caused him to become physically ill. This tort is based on La.Civ.Code art. 2315 and is analyzed under the duty-risk analysis. *Dennis v. Wiley*, 09-236 (La.App. 1 Cir. 9/11/09), 22 So.3d 189, *writ denied*, 09-2222 (La. 12/18/09), 23 So.3d 949. The duty-risk analysis requires the

plaintiff to prove: (1) the conduct in question was a cause-in-fact of the resulting harm or damages; (2) the defendant owed a duty of care to the plaintiff that was breached by the defendant; and (3) the risk of harm was within the scope of protection afforded by the duty breached. *Hardy v. Bowie*, 98-2821 (La. 9/8/99), 744 So.2d 606. All the elements of the duty-risk analysis must be proved or no liability exists. *Bonnet v. Lafayette Parish Sheriff's Office,* 11-676 (La.App. 3 Cir. 11/9/11), 80 So.3d 32.

If negligent conduct causes emotional distress that is accompanied by physical injury, illness, or other physical consequence, the conduct need not be outrageous for the plaintiff to recover. *Moresi v. State through Dep't of Wildlife Fisheries*, 567 So.2d 1081 (La.1990); *see, e.g., Johnson v. First Nat'l Bank of Shreveport* , 00-870 (La.App. 3 Cir. 6/20/01), 792 So.2d 33, *writs denied*, 01-2770, 01-2783 (La. 1/4/02), 805 So.2d 212, 213, respectively. The claim of negligent infliction of emotional distress has also been recognized where "an especial likelihood of genuine and serious mental distress, arising from the special circumstances which serve as a guarantee that the claim is not spurious." *Moresi* 567 So.2d at 1096.

The defendants cite *Webb v. Theriot*, 97-624 (La.App. 3 Cir. 10/29/97), 704 So.2d 1211, as support for arguing Mr. Page has no claim for negligent infliction of emotional distress because the defendants' actions cannot be considered extreme and outrageous. *Webb* has no application here because it addressed intentional infliction of emotional distress, not negligent infliction of emotional distress.

The defendants admitted that they entered Mr. Page's apartment without prior notice and that contrary to Mr. Page's warning, they installed an apparatus on his toilet that had been tried without success at a prior residence. Mr. Page alleged

he suffered such mental anxiety and fear as a result of the defendants' entering his apartment without notice and treating him in a hostile manner that he became physically ill. He further alleged that as a result of the failure of the apparatus installed on his toilet he suffered physical injury.

The defendants denied these allegations, and despite taking Mr. Page's and Ms. Richard's depositions, they did not refute them in their affidavits or with other evidence submitted in support of their motion for summary judgment. Therefore, they have not carried their burden of proof for summary judgment on Mr. Page's claim for negligent infliction of emotional distress.

### Tortious Interference with a Contract

Mr. Page asserts Ms. Benson and Ms. Roger interfered with the contractual relationship that existed between him and his caregiver. The defendants contend Mr. Page's claim has no merit because tortious interference with a contract arises only from a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person. *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228 (La.1989). Louisiana courts, however, have also recognized claims for tortious interference with business relations. To succeed with such a claim, the plaintiff must show "'the defendant acted with actual malice.'" *Brown v. Romero*, 05-1016, p. 6 (La.App. 3 Cir. 2/1/06), 922 So.2d 742, 747, *writ denied,* 06-480 (La. 5/5/06), (quoting *JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 01-1096, p. 11 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 841).

Mr. Page does not allege interference in a contractual relationship between himself and a corporation, nor does he allege the defendants acted with actual

malice. Therefore, he has not asserted a claim recognized by Louisiana law. The defendants are entitled to summary judgment on this claim.

### Negligent Maintenance of Management/Failure to Maintain Controls

In his petition, Mr. Page alleged the Apartments and C.S. Management, Inc. were negligent in maintaining Cookie Benson, Bobby Benson, and Monica Roger as part of their management team because they are related to each other and can "hide each other's misdeeds leaving no recourse for the residents." He further alleged the defendants were negligent in failing to maintain controls that would prevent the events he experienced at the Apartments from occurring.

In support of the motion for summary judgment, Ms. Roger stated in her affidavit that the United States Department of Housing and Urban Development Department (HUD) recommends grievance procedures be adopted and utilized by facilities governed by the agency and that the defendants adopted such a grievance procedure and posted it in the Apartments' leasing office for the tenants' information.

Mr. Page urges that HUD policies, procedures, and regulations he referenced in his arguments "probably" prohibit the nepotism present at the Apartments and violate the standards outlined therein. Furthermore, he admits "he [is] not yet 100% clear that these specific provisions prohibit the nepotism in this case" but asserts "there is a very strong likelihood that they do or that similar proscriptions are contained in other HUD regulations which Derek's counsel has not yet unearthed." He points out Louisiana courts can take judicial notice of the laws of the United States and argues summary judgment is premature because adequate discovery has not been undertaken.

Louisiana Code of Evidence Article 202(A) mandates that "[a] court, whether requested to do so or not, shall take judicial notice of the laws of the United States." Additionally, subsection (B) provides in pertinent part:

> (1) A court shall take judicial notice of the following if a party requests it and provides the court with the information needed by it to comply with the request, and may take judicial notice without request of a party of:
>
> . . . .
>
> (e) Rules and decisions of boards, commissions, and agencies of the United States or of any state, territory, or other jurisdiction of the United States which have been duly published and promulgated and which have the effect of law within their respective jurisdictions.

Mr. Page has not identified, and our research has not revealed, any law that prohibits the Apartments from employing Ms. Benson, Mr. Benson, and Ms. Roger. Pursuant to La.Code Evid. Art. 202(B)(1)(e), we have reviewed the HUD regulations identified by Mr. Page, as well as other HUD regulations that prohibit conflicts of interest and nepotism. As noted by Mr. Page, the Public Housing Authority Ethics Reference Manual, which is prepared and promulgated by the Office of General Council and the Office of Public Housing and Indian Housing of HUD, addresses the HUD conflict of interest and nepotism regulations.

Violation of a statute or regulation can constitute civil negligence but "only when 'the prohibition in the statute is designed to protect from the harm or damage which ensues from its violation.'" *S.J. v. Lafayette Parish Sch. Bd.*, 09-2195, p. 11 (La. 7/6/10), 41 So.3d 1119, 1126, (quoting *Laird v. Travelers Ins. Co.*, 263 La. 199, 267 So.2d 714, 717 (1972)). Thus, a plaintiff must prove a statute or regulation is applicable and was designed to protect from the damage he suffered as a result of the violation. *Id.* Mr. Page has not shown that HUD's conflict of interest or nepotism regulations are applicable to the defendants or that they have

16

violated those regulations. Importantly, he has not shown that HUD's conflict of interest or nepotism regulations were designed to protect him from the damages he claims to have suffered. Accordingly, his arguments are insufficient to defeat summary judgment.

Lastly, Mr. Page argues summary judgment on this issue is premature but has failed to show why he did not perform discovery on this issue in the twenty months between his filing suit and the defendants' filing their motion for summary judgment. Furthermore, he did not file a motion for additional time to conduct discovery before the hearing on the defendants' motion for summary judgment. Accordingly, these complaints have no merit.

## DISPOSITION

The trial court did not err in striking Mr. Page's memorandum in opposition to summary judgment. Summary judgment in favor of the defendants is reversed as to Mr. Page's claims for breach of peaceable possession of his apartment, negligent maintenance of the premises, and negligent infliction of emotional distress but is affirmed with regard to his claims for intentional infliction of emotional distress, tortious interference in his relationship with his caregiver, Tina Richard; negligent maintenance of the management team; and negligent failure to have controls in place to prevent events such as he experienced from occurring.

**REVERSED IN PART; AFFIRMED IN PART; AND REMANDED.**