494 So.2d 1339 (1986)
James F. WILLIAMS, Plaintiff-Appellee,
v.
SOUTHFIELD SCHOOL, INC., Defendant-Appellant.
No. 18043-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1986.
Wiener, Weiss, Madison & Howell by Mark Tatum, Shreveport, for defendant-appellant.
Tucker, Jeter & Jackson by James C. McMichael, Jr., Shreveport, for third party defendant-appellee, South Cent. Bell Telephone Co.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
MARVIN, Judge.
The defendant school, which was sued for damages by a teacher-coach for wrongful termination of his employment contract, appeals a summary judgment dismissing the school's third-party demand for judgment over and against South Central Bell.
The school's third-party demand is based on the fact that SCB informed the police that two of several telephone calls, which were alleged by a complainant to police to be obscene, were traced to a telephone at a particular location that police determined was the residence of the teacher-coach who was fired by the school after he was later arrested.
The trial court did not state reasons for its judgment. The school contends that material issues of fact exist and that the trial court should not have granted summary judgment on any of the four grounds asserted by SCB for summary judgment.[1] CCP Art. 966. The school and SCB argued each ground below and here.
Assuming [but not finding] that SCB's conduct was a cause in fact of the firing of the teacher-coach, we affirm the summary judgment on the finding that, as a matter *1340 of law under the material facts about which there is no genuine dispute, SCB's duty to report the number and location of the telephone from which particular calls were made, did not extend to protect the school in these circumstances against the school's potential exposure to a suit for damages by the teacher-coach for the alleged wrongful firing.

SCB'S MOTION FOR SUMMARY JUDGMENT
SCB supported its motion with much of the record-transcript of the criminal trial of the teacher-coach on the charge of making obscene telephone calls (LRS 14:285). The jury acquitted the teacher-coach. The record contains sworn testimony of the complainant, the police, as well as of experts about standard SCB line identification procedures that were employed to trace the number and location of the telephone from which the calls originated. That trial transcript also contains opinion evidence that was produced by both SCB and by the accused teacher-coach. The school did not file affidavits or other documents opposing summary judgment in this action.
On the advice of police, the complainant formally complained to SCB about the obscene calls. SCB contacted the police. Line identification procedures were instituted by SCB and two telephone calls were traced by SCB as having been placed from a Bossier City telephone on June 5, 1983, that was listed in a name other than the name of the teacher-coach, but that was located at a residence that police determined was the residence of the teacher-coach and his family. SCB did not suggest to police the identity of the caller.
The police then had the complainant listen in on a call the police made to the number at that residence in which a policeman had a conversation with the teacher-coach. The complainant also listened to a tape recording made of that telephone call. The complainant identified to police the voice she had heard on the telephone as the same voice that had made several obscene telephone calls to her.
After further investigation by police and the district attorney, the teacher-coach was arrested under an arrest warrant on July 11, 1983. After learning of the arrest, the school made inquiries to the police and the district attorney before it decided to terminate the employment contract of the teacher-coach for the school year 1983-84. The school made no inquiries to SCB. The only information that derived from SCB's line identification procedures was the telephone number and the name and location under which that number was listed. This information was given by SCB only to the police and SCB did not identify anyone by name or otherwise as the person who made the calls that SCB traced.
By direction of the Louisiana Public Service Commission, SCB, a public telephone utility, is required to take "all possible steps" to cooperate with law enforcement officers "to apprehend persons making [obscene] telephone calls [to its] subscribers..." This order [of the PSC, dated May 17, 1956] was filed in support of the motion for summary judgment. The procedures by which SCB trace a telephone call under such circumstances were described in detail by the expert witnesses in the criminal trial transcript above mentioned and are referred to in the affidavit filed in support of the motion for summary judgment. The school has asserted only the conclusion that SCB's procedures were improperly or negligently done by stating the opinion that SCB's equipment was not fail-safe and could have malfunctioned, supporting that premise with the fact that the jury which tried the teacher-coach on the obscenity charge acquitted him.
We shall not attempt to guess why the jury acquitted the accused, especially in *1341 view of good character reputation evidence introduced by the accused and of the State's burden of proving every element of the crime charged beyond a reasonable doubt. LRS 15:271. The fact of jury acquittal and the fact that "anything," in the way of a malfunction of mechanical or electronic equipment, is possible, does not establish, however, a genuine issue of material fact in this instance.

SCOPE OF DUTY
The school's conclusionary assertion that SCB line identification procedures were performed negligently and carelessly does not establish the source of the duty of SCB to the school or, assuming that a duty existed, specifically how that duty was breached.
The essence of the school's argument is that its action is in tort (CC Art. 2315); that SCB owed it the duty of reasonable care not to disseminate information upon which the school might rely to its detriment and thus cause injury to the school; and that "but for" (the "classic" test for cause-in-fact, according to the school) SCB's communication to the police about the number and location of the telephone from which the calls were made, the police would not have first suspected, and then later arrested, the teacher-coach, and the school would not have fired him.
Besides the mentioned duty of SCB to cooperate as fully as possible with police attempts to apprehend persons making obscene or other proscribed telephone calls, SCB is authorized by the PSC under Tariff Provision A2.2.10 to suspend or terminate telephone service to a subscriber who uses his telephone to make obscene calls. Neither the school nor the teacher-coach has asserted that SCB acted to suspend or terminate telephone service to the teacher-coach. The tariff provision is mentioned only because it is an additional illustration of the policy of the Louisiana Public Service Commission to deter and prohibit obscene telephone calls.
The first inquiry into determining legal responsibility in a tort action is whether the conduct of which a plaintiff complains was a cause in fact of the harm. Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Cause-in-fact is a "but for" inquiry into the logical, and not absurd, extremes. Cause-in-fact, however, is an entirely different and distinct inquiry from the inquiry into legal cause, or legal policy. Finley v. North Assur. Co. of America, 476 So.2d 837 (La.App. 2d Cir. 1985), citing Professor Malone.
The PSC has imposed specific duties on the telephone public utility company to facilitate the arrest by police of those who make obscene telephone calls and to limit the access of such callers to private telephone subscription service. In its order of May 17, 1956, the PSC expressly complained of the lack of cooperation in the past and impliedly required the utility to be reasonably efficient and expeditious in devising and implementing its line identification procedures to identify to police the number and the location from which a particular call was made. This implication is squarely within "all possible steps" of cooperation that the PSC order expressly requires. Appellant would have us declare that the utility's duty should encompass the risk that Southfield may be held liable for wrongful termination of an employee who was fired after being arrested on an obscenity charge that arose directly or indirectly from the utility's identification procedures. Our analysis leads us to conclude that the utility's duty does not extend to protect against this risk.
Foreseeability of harm is not always a reliable guide and is not the only criterion for resolving the duty-risk problem. Because a risk may foreseeably arise out of certain conduct does not necessarily place that risk within the scope of the duty owed with respect to the conduct complained of. Neither are all risks excluded from the scope of the duty because they are deemed unforeseeable. Hill, supra, at p. 622. Proper analysis, as suggested by Hill and its predecessor cases, Pierre v. Allstate Ins. Co., 257 La. 471, 242 So.2d 821 (1970) and Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 *1342 So.2d 298 (1962), requires that we inquire into the ease of associating the risk with the duty and into how appropriate the duty is to the risk. Even if these inquiries are answered favorably to a plaintiff, proper analysis further requires consideration of any legal or policy considerations which may excuse the consequences that follow particular negligent conduct. See Robertson, Dialogues on Hill v. Lundin, 34 La.L. Rev. 1 (1973) and Crowe, Anatomy of a Tort, 22 Loy.L.Rev. 903 (1976).
The duty imposed on the utility certainly does not contemplate either 100 percent accuracy or allow reckless abandon by the utility in devising and implementing reasonable line identification procedures. The school has not specifically shown or suggested in what factual respects that the line identification procedures devised and implemented by SCB were unreasonable. The purpose of the PSC order would be defeated if SCB were compelled to defend every action based on the conclusionary assertion that its procedures were negligently and carelessly devised or implemented. In such a situation, it would be more economically practical for SCB to delay or avoid employing the procedures when requested to do so by the police than for SCB to risk exposure to the expense of defending damage and indemnification actions in the nature of the school's action.
Moreover, SCB's reporting to the police the number and location of the telephone from which the particular calls were made did not give the police probable or reasonable cause either to obtain a warrant for, or to arrest, the teacher-coach. Admittedly, the police focused their attention on the male adults residing at that number because of the SCB report, but the identity of the voice of the teacher-coach as the obscene telephone caller (and the probable cause for the arrest warrant) came directly from the complainant and not from SCB. In this same sense, the school's decision to fire the teacher-coach was based only indirectly on SCB's report to police of the number and location of the telephone. This indirectness or remoteness affects not only the cause-in-fact determination (logical and not absurd consequences), but, as well, the ease of associating the risk mentioned with the duty the school seeks to enforce. A defendant's duty extends to protect some, but not all, citizens against some, but not all, risks. See Robertson, supra.
The duty owed by SCB to devise and employ reasonable line identification procedures and cooperate with police in apprehending obscene telephone callers is one that is owed to the public in general. Compare Stewart v. Schmieder, 386 So.2d 1351 (La.1980); Mobley v. Rego Co., 412 So.2d 1143 (La.App. 2d Cir.1982), writ denied; Dunne v. Orleans Parish School Board, 463 So.2d 1267 (La.1985). We cannot easily associate this duty with the risk of harm from which the school claims injury. To extend the duty to encompass such a risk would discourage, instead of encourage, all possible cooperation by the utility with the police to apprehend obscene callers.

DECREE
At appellant's cost, the judgment appealed is AFFIRMED.
NOTES
[1] (1) The third party demand of Southfield has prescribed;

(2) The information communicated by SCB concerning the plaintiff was truthful;
(3) Truthful or not, SCB has a qualified privilege against liability for such communications, made without ill will or malice; and
(4) SCB was not negligent in its communication of information concerning the plaintiff under a traditional negligence law analysis:
A. SCB's communications and its conduct in connection therewith were not a cause-in-fact of harm to plaintiff; and
B. SCB owed no duty to the plaintiff or Southfield concerning the maintenance and operation of its line identification equipment.