HALL, Chief Judge.
This is a personal injury action arising from an automobile accident. The plaintiff is Ernie A. Parker. The defendants are Kenneth W. Day, his employer Day House Movers, Inc. and Empire Fire and Marine Insurance Co.
Following trial on the merits, the district judge found Mr. Day’s fault to be the sole cause of the accident and held the defendants liable in solido to the plaintiff. The trial judge awarded Mrs. Parker special damages for medical expenses in the amount of $2,663.00 and general damages in the amount of $17,900.00. The latter award consisting of $7,600.00 for pain and suffering, mental anguish and disability caused by plaintiff’s physical injuries and $10,300.00 for temporary aggravation or re-activation of her emotional difficulties and any slight residual emotional difficulty related to the accident. Judgment was rendered for a total amount of $20,563.00. Plaintiff appeals the general damage award contending that it is grossly inadequate given the severe emotional problems she sustained as a result of the accident. We affirm.

The Facts

The accident occurred on October 13, 1984. Mrs. Parker was approaching a narrow, two-lane bridge over the Ouachita River in Union Parish when she saw a child riding a bicycle on the bridge, The child suddenly swerved into Mrs. Parker’s lane of travel. She applied her brakes and gradually slowed her car to approximately 10 m.p.h., in order to give the child time to get off the bridge. Mr. Day, who was travelling behind the plaintiff in a Ford F-800 truck, testified that he saw the cyclist swerve into Mrs. Parker’s lane but due to inadequate brakes on his flat-bed trailer was unable to stop in time to avoid rear-ending the plaintiff’s car. The posted *1212 speed limit for the approach to the bridge was 30 or 35 m.p.h. The state trooper who investigated the accident testified that Mr. Day said that he was travelling at approximately 55 miles per hour prior to applying his brakes. It was stipulated that Mr. Day was within the course and scope of his employment with Day House Movers, Inc. when the accident occurred.
Mrs. Parker was wearing both a lap and a shoulder harness when the accident occurred and while she recalled being thrown about inside the car, she did not recall hitting any part of her body on the vehicle. She had no outward signs of injury but testified that shortly after the accident she felt a severe pain on the left side of her head. A nurse who was passing by put a cervical collar on plaintiff and sat with her until she was taken by ambulance to the hospital. X-rays of Mrs. Parker’s skull, neck and back were negative. She testified that she sustained bruises on her abdomen from the action of the seat belts. While in the emergency room, Mrs. Parker began complaining of head and neck pain and general stiffness. Pain medication and muscle relaxants were prescribed and she was released from the hospital.
Mrs. Parker spent the next 12 days in bed at her son’s home in Arkansas. She testified that during this time her general stiffness and soreness gradually subsided but that her neck began to hurt worse and that her headaches continued.
Accompanied by one of her daughters, Mrs. Parker returned to her home in Oak Grove and consulted Dr. Jack Noble, a family medicine specialist. On October 25, 1984 he noted that her main complaint was neck pain and that her physical exam showed tenderness and spasm in her neck muscles. He diagnosed her as having an acute cervical strain. He prescribed muscle relaxants and anti-inflamatory medication. When Dr. Noble saw Mrs. Parker on November 5, 1984 he noted she had the same neck complaints but was also complaining of dizziness, nausea and vomiting. His exam revealed two localized tender areas or “trigger points” which he treated with an injection. He also provided her with a foam cervical collar. Finding Mrs. Parker’s neck pain to be no better at her next visit, Dr. Noble hospitalized her on November 12, 1984 for more intensive treatment including physical therapy and pain control.
During Mrs. Parker’s hospitalization, Dr. Noble noted that she was having quite a bit of problems with anxiety, feelings of sadness and sleep disturbances. This caused him to investigate further and led to his initial diagnosis of depression. He also testified that Mrs. Parker reported having some extremely vivid and disturbing dreams and some problems with hallucinations while she was in the hospital. He felt that these problems were a side effect of the anti-depressant drugs he had prescribed. Mrs. Parker was also found to be suffering from sporadic high blood pressure and hemorrhoids. Dr. Noble testified that the stress of the automobile accident may have aggravated her pre-existing blood pressure condition. She underwent surgery for the hemorrhoid condition and was released on November 25, 1984.
After her release from the hospital, Dr. Noble continued to see Mrs. Parker periodically up until the time of the trial. He testified that throughout December, 1984 she complained of worsening weakness. In January 1985 she felt better but was still feeling anxious and still complaining that her neck was bothering her. He injected the “trigger points” in her neck again. Later that month he noted that Mrs. Parker was weak, run down, dizzy and appeared depressed and anxious. In February 1985 he noted that Mrs. Parker was still experiencing sleep problems as well as constant anxiety. She also reported having suicidal thoughts. Feeling that the medication he had prescribed had not helped, Dr. Noble referred Mrs. Parker to Dr. Walter F. An-gelí, a Shreveport psychiatrist.
Dr. Angelí saw Mrs. Parker once for approximately one hour on February 15, 1985. He noted that she complained of sleep disturbances, nightmares of the accident, anxiety, depression, weakness, decrease in appetite, inability to look after herself or be alone, and suicidal feelings. *1213 He noted that she had lost approximately 18 pounds since the accident and that she had lost interest in many of the things that would normally make her happy such as driving her car and visiting people. He stated that she was very depressed looking, extremely pessimistic and that she felt there was “no help for her”. He stated that she looked very much like she was suffering. He thought that psychological testing would be helpful and recommended hospitalization. Mrs. Parker declined hospitalization citing the high cost of such treatment and her apprehension about the medicine which might be administered to her in a psychiatric hospital. Dr. Angelí diagnosed Mrs. Parker as having post-traumatic stress disorder. He stated that he was not aware of anything other than the automobile accident that could have precipitated her condition.
In March 1985, Dr. Noble noted that Mrs. Parker was still complaining of sleep difficulties, bad dreams, depression and anger at her loss of independence and loss of privacy. He increased her anti-depressant medication at that time.
In April 1985, Mrs. Parker reported to Dr. Noble that she had experienced increased problems with dreaming and visual hallucinations which she attributed to the increase in her medication.
In May 1985, Dr. Noble noted that Mrs. Parker’s depressive symptoms continued, that she continued to have sleeping problems and felt tired most of the time. He also noted that Mrs. Parker stated that she did not care whether she woke up in the morning or not.
In July 1985, Mrs. Parker appeared a little less depressed to Dr. Noble and reported that she had been driving a little bit more. Dr. Noble next saw Mrs. Parker in October 1985, at which time she stated she was much worse and reported having some particularly vivid and disturbing dreams. He noted that she was having trouble distinguishing dreams from reality on some occasions.
In February 1986, Mrs. Parker was evaluated by Dr. Paul D. Ware, a Shreveport psychiatrist, for approximately one hour. In his opinion Mrs. Parker was not suffering from post-traumatic stress disorder, clinical depression or any other significant psychiatric illness. He testified by deposition that when he saw her she demonstrated no evidence of a depressed mood or any undue anxiety, but that she described having difficulty sleeping and feeling tired. He stated that the nightmares she had following the accident were probably a side effect of her anti-depressant medication. He noted that she also described feeling a loss of independence and self-esteem. His impression was that she was preoccupied with and tended to exaggerate some of her symptoms. He also stated that she did not appear to be motivated to get well. He diagnosed her as suffering from adjustment disorder of adulthood, with mildly depressed mood. He explained that an adjustment disorder arises when a person has some stress or change going on in her life that is causing an interruption in her equilibrium. He stated that he could not identify what was causing Mrs. Parker’s adjustment disorder but that Mrs. Parker tended to relate her difficulties to the accident. Dr. Ware could not identify any other significant stresses in her life that would be causing her trouble but stated that he could not relate all of how she was feeling to the accident, per se.
In April 1986, Dr. Noble treated Mrs. Parker for a reoccurrence of her neck pain. He noted also that she continued with the same symptoms and expressed suicidal thoughts.
In June 1986, he noted that Mrs. Parker had worsening depressive symptoms, continuing sleeplessness, dizziness, anxiety, fatigue and suicidal thoughts. He noted that she appeared quite depressed and distraught. He also noted that her neck pain continued and that she still had quite a bit of tenderness in that area.
In July 1986, he noted that she was quite depressed and persuaded her to make an appointment with a family therapist, Ms. Molly Thomason. Mrs. Parker returned to his office the next day crying and upset and had a dizzy spell. He attributed those symptoms to be an emotional reaction to *1214 her first meeting with Ms. Thomason. Dr. Noble reported that Mrs. Parker’s son called him that same day to report that she showed signs of actively planning suicide. They discussed the option of a forced psychiatric consultation but no such action was taken.
In September 1986, Dr. Noble noted that her depressive symptoms were improved but still present, that she was still having trouble sleeping, had headaches, was still experiencing problems with her neck and still having occasional thoughts of suicide. Their last visit prior to trial was on October 29, 1986. Based on his treatment of Mrs. Parker for two years Dr. Noble concluded that she was suffering from depression and that it was related to the automobile accident. He stated that after talking to Mrs. Parker in depth he could not find any other pre-disposing factors relative to causing her depression other than the motor vehicle accident. He stated that he did not think that the loss of her parents had anything to do with her depression. He stated that while she had shown some improvement, she was “not out of the woods yet” and still had significant symptoms. He could not say exactly what her prognosis was but estimated that she would gradually get better over the next one or two years. He stated that based on his physical findings and his interviews with her that it was his opinion that she was not exaggerating or faking her symptoms. He further noted that if anything Mrs. Parker tended to minimize her problems.
Ms. Thomason saw Mrs. Parker weekly from July 3, 1986 up until the time of the trial. She testified that Mrs. Parker was depressed and that her depression was connected to her traumatic reaction to the automobile accident. She explained that Mrs. Parker's personality structure was such that a traumatic event in her life could be expected to “knock her off balance” and that this pre-disposed her to having a depressive reaction to the accident. She stated that Mrs. Parker’s emotional trauma from the accident was severe enough to cause the depression that Ms. Thomason had observed. Ms. Thomason felt that in addition to the physical pain resulting from the accident, Mrs. Parker’s depression was also caused by her loss of a sense of independence and a loss of privacy. She noted that during the four months that Mrs. Parker had been in therapy, she had improved but that her depression had not lifted and that she was still experiencing traumatizing nocturnal dreams, lethargy, weakness and confusion. She noted that Mrs. Parker responded to her inability to cope with life with feelings of anger, frustration and intense self-hatred. She also noted suicidal thoughts. Ms. Thoma-son noted that these symptoms were reported to have been continually present since the accident and stated that she could not say when Mrs. Parker’s depression would end. She recommended that Mrs. Parker engage in long-term therapy over the next several years. Ms. Thomason testified that while Mrs. Parker’s age and adjustment to other losses in her life besides the accident did have an effect on her condition, the depression Mrs. Parker had been suffering during the last two years was much more intense than simple adjustment reaction to other general losses that she has incurred in her life as a result of the aging process.
Mrs. Parker testified that prior to the accident she was always strong physically, took care of her house and yard herself and did her own cooking. Subsequent to her husband’s death in 1965, she obtained her GED and worked as a nurse’s aide in a nursing home for approximately three years. In 1971, after completing LPN training, she began working as an LPN in a nursing home in Oak Grove. She held this job until 1978 when she became disabled as a result of an accident at work. Mrs. Parker testified that she was very sad about not being able to continue working at the nursing home. When Mrs. Parker applied for social security disability benefits following the nursing home accident, she was sent to Dr. William J. Erwin, a psychiatrist, for evaluation. He saw her once on October 9, 1978 for approximately one hour. On the basis of this interview he concluded that although she exhibited some symptoms of depression that these symp *1215 toms were generally mild in degree and episodic rather than continuous. He stated that there was no suicidal ideation present, no serious depression and no evidence of significant anxiety. He concluded that she “might possibly be suffering from a very mild depressive disorder.”
Mrs. Parker testified that after recovering from the 1978 nursing home accident she lived a full life until the automobile accident in 1984. She testified that during this time she cared for the extensive needs of her elderly parents until they died, one in 1981 and the other in 1983. She testified that after their deaths she had no responsibilities and could live just for herself. She described herself as a happy, independent and private person who took care of her own affairs and did not want anybody involved in them. She testified that one of her “greatest enjoyments” was travelling and that she was “on the road” every chance she got. She frequently drove her car on out of state trips to visit her children and other relatives and was on the way home from visiting her son in Arkansas when the accident occurred. She was 68 years old at that time. Mrs. Parker testified that while she was hospitalized she began to feel withdrawn, nervous and anxious, that she had bad dreams and developed insomnia. She testified that since the accident she drives very little and has never reached the point where she feels comfortable about it. She testified that she cannot care for herself and primarily stays with her children, staying alone at her home only for very limited periods of time. When she stays alone her food is prepared for her by other people. She stated that physically she is very weak, has “no strength at all” and that her attempts to walk for exercise were hampered by dizziness and weakness. Her children do her housework and her yardwork. She also testified that at the time of trial she still had pain in her neck and constant headaches. She testified that she had no life as she once knew it, wanted to die and had entertained thoughts of suicide. She testified that she had never felt this way before, specifically stating that she did not feel this way after her job related accident in 1978. Mrs. Parker’s testimony regarding-the changes in her life was corroborated by that of her friends, relatives and her parent’s minister in whom she confided her suicidal urges.

Trial Court Findings

The trial judge found that Mrs. Parker and her son had substantially overstated or exaggerated the force of the collision and that her physical injuries had abated within four to five months of the accident. Regarding Mrs. Parker’s claims of emotional injury resulting from the accident, the trial judge found that the accident temporarily created greater than average emotional stress for the plaintiff. He concluded however, that the immediate and causative effects of the accident both physically and emotionally, were substantially resolved within six months. He explained that:
“Thereafter, the reaction and attitude of her family, the continued medication and emphasis of practitioners and others upon “depression” and upon her episodic moods, the progressive changes of age, the pendency of her suit, and the universal inability of all elderly persons fully to cope with the loss of their former life have all contributed to her state and overwhelmed the causative effects of the accident.”
The trial judge denied plaintiff recovery of the cost of her counseling sessions with Ms. Thomason finding that the causal connection between the accident and plaintiffs emotional state had been replaced by other stressful, external factors before she began seeing Ms. Thomason in July 1986.

General Damages

Plaintiff contends the trial court erred in awarding inadequate general damages. Plaintiff concedes that the medical evidence in the case indicates that Mrs. Parker had “substantially recovered” from her physical injuries within six months of the accident. However, plaintiff argues that the preponderance of the evidence supports a finding that Mrs. Parker sustained severe psychological and emotional injuries of indefinite duration as a result of the accident. Plaintiff cites the testimony of plaintiffs *1216 treating physician, Dr. Noble, plaintiffs therapist, Ms. Thomason and that of Dr. Angelí, the consulting psychiatrist, as well as plaintiffs own testimony and that of her relatives and neighbors in support of her position. Plaintiff also argues that she had completely recovered from the emotional distress which she suffered subsequent to her 1978 job related injury and contends that the trial judge was wrong to have concluded that prior to the 1984 automobile accident she was not “the paragon of health, vigor and emotional stability which her children and her attending physician apparently assumed and which plaintiff now imagines in retrospect.”
Defendants, on the other hand, relying on the testimony of Dr. Ware, argue that plaintiff has exaggerated her symptoms and has no desire to resolve her problems. They also raise the possibility that her emotional injuries were not caused by the accident but were instead, merely a continuation of the problems she experienced in 1978 and argue that plaintiffs credibility was damaged because she did not mention to several of the doctors that she had been evaluated by Dr. Erwin in 1978.
An appellate court should not disturb a finding of fact unless it finds it to be clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The reviewing court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are reasonable. Brents v. Gulf Insurance Co., 465 So.2d 860 (La.App.2d Cir.1985), writ denied 469 So.2d 984. It is well settled that plaintiff has the burden of proving by a preponderance of the evidence damages caused by defendant’s fault. Jordan v. Travelers Insurance Co., 245 So.2d 151 (La.1971). The trier of fact has much discretion in awarding general damages. Before a Court of Appeal can disturb an award made by a trial court the record must reveal that the trier, of fact abused its discretion in making its award. Only after making the finding that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Reck v. Stevens, 373 So.2d 498 (La.1979).
Mrs. Parker was involved in a forceful collision which undisputedly resulted in an acute cervical strain which was resolved within approximately six months after the accident. We find that the $7,600.00 awarded by the trial judge was adequate to compensate Mrs. Parker for the pain and suffering she experienced as a result of the physical injury she sustained in the accident. With regard to the emotional injuries allegedly sustained by Mrs. Parker, the evidence supports a conclusion that she did suffer a traumatic reaction to the accident which eventually worsened into a depression and affected her ability to lead an independent life. At the time of trial, approximately two years after the accident, her condition had improved but she still had some improvement to make. As found by the trial court, age and other factors in her life undoubtedly played a part in her emotional problems, and all of her present problems cannot be said to have been caused by the accident. We conclude that the amount awarded by the trial judge, although at the extreme of the low side, was not so low as to amount to an abuse of his much discretion. We find that the award of $10,300.00 adequately compensated the plaintiff for the emotional problems she suffered as a result of the automobile accident.
For the reasons assigned, the judgment of the district court is affirmed at appellant’s costs.
AFFIRMED.