MOORE, J.
|/The defendants, Christopher Howard and Knight Transportation, Inc., applied for a writ of review of the district court’s judgment denying their motion for summary judgment. We granted the application, docketed the case for oral argument and directed the parties to submit briefs. For the following reasons, we make the writ peremptory, grant the motion for summary judgment and dismiss the plaintiffs claim.
Facts
On February 14, 2011, Heather Coving-ton was driving west on 1-20 when she drove over an object in the road that she mistakenly believed was a paper plate or paper cup. In fact, the object was a drive shaft that had fallen from a tractor-trailer truck driven by Christopher Howard and owned by Knight Transportation, Inc. Howard had pulled over on the roadside further down the Interstate. Traveling at 70 miles per hour, Covington decided to straddle the object with her vehicle. As she passed over the object, she felt the car jerk and heard a noise. Alarmed, she pulled her car onto the shoulder. The drive shaft was lodged under her vehicle. Friction from the drive shaft rubbing the concrete surface created enough heat to ignite a minor grass fire. Covington’s vehicle also suffered some minor damage, including a flat tire.[1]
Although she suffered no physical injuries, Covington filed a petition for damages on February 13, 2012, against Knight and Howard (collective!y “Knight”) for pain and suffering, mental anguish and medical expenses caused by their negligence. Cov-ington began seeing a psychologist, Dr. |2E.H. Baker, on March 10, 2011.
Knight filed an answer denying the allegations and alleging nine “affirmative defenses.” Thereafter, on July 10, 2013, Knight filed a motion for summary judgment asserting that the plaintiff cannot meet her burden of proving that Knight’s acts or omissions constituted “outrageous conduct” that caused the plaintiff genuine and serious emotional distress. Attached *936 to their motion were the affidavit of Cov-ington and her psychologist, Dr. E.H. Baker. Knight alleged no issues of material fact and entitlement to summary judgment as a matter of law.
Covington opposed the motion. She argued that the special circumstances of the accident created by her fragile pre-existing mental condition caused her to suffer genuine emotional distress which she continues to experience. This mental distress, she argues, has led to physical consequences such as sleeplessness, nightmares and poor appetite. Dr. Baker stated in his deposition that the accident was the final straw (that broke the camel’s back), pushing her over the edge into generalized anxiety disorder.
After a hearing on December 17, 2013, the district court denied Knight’s motion, stating that there remained issues of material fact regarding the report of Dr. Baker, who acknowledged that the incident would have aggravated the plaintiffs pre-existing mental condition. The court also noted that there was some property damage to the plaintiffs vehicle that distinguished the case from Moresi v. State, Through Dept, of Wildlife & Fisheries, 567 So.2d 1081 (La.1990). This writ application followed.
^Discussion
The defendants’ sole assignment of error is that the trial court erred by denying their motion for summary judgment because the plaintiff cannot meet her burden of proving certain essential elements of her claim for negligent infliction of emotional distress. Specifically, they contend she cannot meet her burden of proving: (1) the “especial likelihood of genuine and serious mental distress arising from special circumstances” required to recover mental distress damages; (2) outrageous conduct by the defendants; and, (3) that her mental distress was caused by the incident.

General Principles

The motion for summary judgment is a procedural device to avoid a full-scale trial when there is no genuine issue of material fact. Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Jones v. Foster, 41,619 (La.App. 2 Cir. 12/13/06), 945 So.2d 262; Foley v. Sportran, 40,624 (La.App. 2 Cir. 5/17/06), 930 So.2d 368. Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except certain domestic actions; the procedure is favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2); Racine v. Moon’s Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. The motion should be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Supporting and opposing affidavits “shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, Rand shall show affirmatively that the affiant is competent to testify to the matters stated therein.” La. C.C.P. art. 967(A). Personal knowledge means something the witness actually saw or heard, as distinguished from what he learned from some other person or source. Barnes v. Sun Oil Co., 362 So.2d 761 (La. 1978); Wells v. Red River Parish Police Jury, 39,445 (La.App. 2 Cir. 3/2/05), 895 So.2d 676, writ not cons., 2005-0854 (La.5/13/05), 903 So.2d 438.
The burden of proof remains with the mover; however, if the mover will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, then the mover may merely point out to the court the absence of factual support for one or more ele *937 ments essential to the plaintiffs claim. The burden then shifts to the plaintiff to present evidence demonstrating that genuine issues of material fact remain. La. C.C.P. art. 966(C)(2); Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606; Foley v. Sportran, supra. If the plaintiff then fails to produce such evidence, then summary judgment is proper. King v. Phelps Dunbar LLP, 98-1805 (La.6/4/99), 748 So.2d 181.
Appellate review of the grant or denial of a summary judgment is de novo. Jones v. Estate of Santiago, 2003-1424 (La.4/14/04), 870 So.2d 1002; Jones v. Foster, supra; Row v. Pierremont Plaza LLC, 35,796 (La.App. 2 Cir. 4/3/02), 814 So.2d 124, writ denied, 2002-1262 (La.8/30/02), 823 So.2d 952.
“Negligent Inñiction of Emotional Distress ”
Although negligent infliction of emotional distress (“NIED”) is not an independent tort like battery, trespass, or intentional infliction of emotional | ¡¡distress, etc., Moresi, supra, it is now well established in Louisiana jurisprudence that a claim for NIED unaccompanied by physical injury is viable under La. C.C. art. 2315, which provides, in pertinent part, that “[e]very act whatever of man that causes damages to another obliges him by whose fault it happened to repair it.” Courts utilize a duty-risk analysis to assist in determining whether one may recover under La. C.C. art. 2315. Bordelon v. St. Frances Cabrini Hosp., 93-1331 (La.App. 3 Cir. 5/4/1994), 640 So.2d 476. For liability to attach, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318. A negative answer to any of those inquiries results in a determination of no liability. Mathieu, 94-0952 at p. 11, 646 So.2d at 326.
Additionally, for those NIED claims unaccompanied by physical injury, recovery is limited to facts constituting “special circumstances” involving the especial likelihood of real and serious mental distress arising from the particular circumstances. Moresi, supra; Crockett v. Car-dona, 97-2346 (La.App. 4 Cir. 5/20/98), 713 So.2d 802. The guidelines for limiting recovery in NIED cases unaccompanied by physical injury reflect “the intent of the legislature and courts ⅜ * * to limit the class of claimants and | (¡prevent false claims. This policy protects the court’s time and limited resources.” Crockett, supra at 805. The practical effect of these policy limitations is to narrow the scope of the defendant’s duty.
Both parties in this case contend that the principles laid down in Moresi for evaluating the viability of a NIED claim support their respective positions.
In Moresi, supra, the plaintiffs alleged that they suffered mental distress as a result of a “threatening” note written on the back of a wildlife agent’s business card and pinned to their camp door. The note read: “We missed you this time but look out next time.” Just two months earlier, the plaintiffs had been subjected to an allegedly wrongful search, seizure and arrest by game agents, and they assumed that the note on their door constituted further harassment by the agents. The evidence at trial indicated that the agents, *938 who were not involved in the prior investigation, mistakenly believed they were placing the note on the camp of their friend, but misread the directions to his camp. Nevertheless, the trial court awarded each plaintiff $1,000 for his mental distress resulting from the misplaced message. The court of appeal affirmed the award. The supreme court granted certiorari.
The supreme court observed that most jurisdictions follow the general rule that recovery for emotional distress is available “for the independent tort of intentional infliction of emotional distress,” but “if the defendant’s conduct is merely negligent and causes only mental disturbance, without accompanying physical injury, illness or other physical consequences, the defendant is not liable for such emotional disturbance.” Id. at 1095. 17However, Louisiana courts have deviated from this general rule in some cases.[2] All of these exceptional cases had in common “the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious.” Id. at 1096.
Finding that the facts did not meet those criteria, the court held that the game agents were not liable for the plaintiffs’ mental disturbance caused by their negligence. “The agents’ acts were not intentional, outrageous or related to another tort, nor was the plaintiffs’ mental disturbance severe, or related to personal injury or property damage, and the plaintiffs were not in great fear for their personal safety.” Id. The court concluded that “this case does not fall within any category having an especial likelihood of serious and genuine mental distress, and thus lacks any recognized elements guaranteeing the genuineness of the injury claimed.” Id.
| ¿The Special Circumstances and Outrageous Conduct Requirements
Later cases following Moresi have limited recovery for NIED to those cases that involved facts where the defendant’s conduct was outrageous or deemed outrageous because the defendant breached a special direct duty to the plaintiff and where the resulting mental distress the plaintiff suffered was easily associated with the defendant’s conduct. Jenkins v. Washington & Wells, L.L.C., 46,825 (La. App. 2 Cir. 1/25/12), 86 So.3d 666, writ denied, 2012-0427 (La.4/9/12), 85 So.Bd 705; Doe v. Dunn, 39,179 (La.App. 2 Cir. 12/22/04), 890 So.2d 727, writ denied, 2005-0443 (La.4/29/05), 901 So.2d 1066; Succession of Harvey, 97-2815 (La.App. 4 Cir. 6/24/98), 716 So.2d 911, writ denied, 98-2025 (La.11/6/98), 728 So.2d 391. See, e.g., *939 Bordelon v. St. Frances Cabrini Hospital, supra (hospital liable for NIED where it breached an independent direct duty to the plaintiff by negligently giving her someone else’s blood after she made special arrangements with the hospital to receive only her blood and resulting in mental distress arising from fear of contracting the AIDS virus). Utilizing a duty-risk analysis rather than focusing on an “outrageous” act, some courts have required that the plaintiff prove that the defendant owed an independent, direct duty to the plaintiff, that the duty afforded protection to the plaintiff for the risk and harm caused, that the duty was breached, and that the mental anguish suffered was genuine and serious. Dennis v. Wiley, 2009-0236 (La.App. 1 Cir. 9/11/09) 22 So.3d 189, writ denied, 2009-2222 (La.12/18/09), 23 So.3d 949 (sheriffs office owed no special duty to rape victim to preserve evidence obtained during investigation of the crime for the benefit of the victim); Bacas v. Falgoust, 99-1312 (La.App. 5 Cir. | ¡,5/30/00), 760 So.2d 1279, (McManus, J. concurring with reasons) (defendant, a private investigator assisting attorney with worker’s compensation claim, owed a direct duty to this client/plaintiff because he knew of her strained emotional condition after she had been raped, and breached that duty by attempting to coerce her to have sex with him). However, if the negligent conduct that causes emotional distress is accompanied by physical injury, illness, or other physical consequences, the conduct need not be outrageous for the plaintiff to recover. Page v. Benson, 2012-244 (La.App. 3 Cir. 11/7/12), 101 So.3d 545.
Turning now to the instant case, Knight argues that the plaintiff will be unable to show that this case falls into that category of cases that indicate an “especial likelihood of genuine and serious mental distress arising from special circumstances.” Knight argues that its conduct amounted to, at most, simple negligence, and does not meet the outrageous conduct needed to support a claim for NIED. The only exceptions to the special circumstances requirements, argues Knight, are those cases in which the plaintiff has suffered physical injury, illness or other physical consequences, or in some cases where the plaintiff suffered property damage.
On the other hand, Covington argues that her case meets the special circumstances requirement of Moresi because she submitted Dr. Baker’s deposition as evidence that her claim is not spurious and shows that she is particularly susceptible to severe mental distress even as a result of this minor incident and that her mental distress is genuine and severe. Dr. Baker stated in his deposition that Covington had suffered from several mental stresses in her life prior to the accident, including the loss of her father in an |inautomobile accident, and being raped while in high school. Additionally, Covington contends that she does not have to show “outrageous conduct” by the defendants to prevail, charging that the defendants are confusing the elements of intentional infliction of emotional distress” with the elements of NIED, which she alleges requires only a simple “duty-risk” analysis, citing Page v. Benson, supra. She further argues that she does not have to show outrageous conduct because she has suffered “physical injuries,” namely, sleeplessness, nightmares, and loss of appetite. She contends that, in any event, a drive shaft falling off a vehicle traveling at Interstate speeds constitutes outrageous conduct. Finally, she argues that she suffered property damage to her vehicle that dispenses with the need to show outrageous conduct.
After review of the facts and evidence in the record, we conclude that Covington cannot meet the threshold requirements of *940 Moresi, supra, nor can she meet the elements of a duty-risk analysis.
The common thread of the special circumstances NIED cases collected in Moresi is that each of those cases present facts proving that the defendant’s act created a very strong and obvious likelihood that the plaintiff would suffer genuine and severe mental distress. Typically, the defendant’s conduct under the circumstances is deemed so unconscionable or outrageous such that a person of ordinary sensibilities would suffer genuine and severe emotional distress. Moresi, supra; Doe v. Dunn, supra; Succession of Harvey, supra. However, the phrase “special circumstances” is not necessarily limited to objectively “outrageous” conduct, such as when the defendant owes the plaintiff an independent, direct duty, and his breach |nof that duty is deemed unconscionable or outrageous under the circumstances, or when a defendant knew or should have known that the plaintiff was particularly vulnerable to emotional distress from his act. See, e.g. Bordelon v. St. Frances Cabrini Hosp., supra. “[UJnless the actor has knowledge of the plaintiffs particular susceptibility to emotional distress, the actor’s conduct should be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.” Succession of Harvey, supra at 917, quoting Scamardo v. Dunaway, 94-545 (La. App. 5 Cir. 2/15/95), 650 So.2d 417, writ denied, 97-1395 (La.9/5/97), 700 So.2d 517.[3] The defendant’s knowledge that a plaintiff is particularly susceptible to emotional distress is a factor to be considered.
The “special circumstances” requirement is not met in this case. Although Covington presented evidence that tends to show that her mental distress is genuine, and therefore, arguably not spurious, introducing such evidence does not transform the case into that category of cases in which the circumstances ensure that the claim is not spurious. The categories of cases listed in Moresi involved cases where the defendant’s conduct was outrageous or he knew or should have known that his conduct, judged in the light of the effect such conduct would have on a person of ordinary sensibilities, would cause genuine and severe mental distress, and is thus deemed to be outrageous. However, if the defendant knows that the plaintiff is particularly susceptible to emotional distress, this is a factor to be | ^considered in the equation of the “special circumstances.” In this instance, the defendants had no knowledge of Coving-ton’s fragile mental condition such that their simple negligence could be easily associated with the harm of her extreme mental distress. The special circumstances of Moresi require facts that indicate either that the defendant should have known that his outrageous conduct would cause genuine and severe mental distress to a person of ordinary sensibilities, or the defendant had actual knowledge of the plaintiffs heightened susceptibility to mental distress such that his conduct would be deemed outrageous.
Covington also argues that she does not have to show outrageous conduct because her mental distress is accompanied by physical injuries, namely, sleeplessness, nightmares and loss of appetite. Although she does not cite any cases in support of this contention, Covington is clearly arguing that sleeplessness, nightmares and loss of appetite are physical *941 consequences or physical illness accompanying her mental distress.
We have found no cases in Louisiana expressly or directly deciding this particular issue; however, in our review of cases in which such symptoms are discussed as injuries or damages, we find that courts classify these injuries as emotional or psychological injuries arising from some kind of physical injury. See, e.g., Parker v. Day, 516 So.2d 1211 (La.App. 2 Cir. 12/2/87), writ denied, 519 So.2d 127 (La.1988).
However, there are numerous cases from other jurisdictions concerning this particular issue in NIED claims. Those cases are divided on whether these three injuries can be treated as “physical” injuries or illness in the context of a NIED claim. See, Wilson v. Sears, Roebuck & Co., 757 Fj2d13 948 (8 Cir.1985) (the only condition of the plaintiff manifesting itself and shown to be related to the defendant’s negligence was post-traumatic stress disorder, which was not the type of physical injury that could support recovery); Michalezewslci v. CSX Tramp., Inc., 2007 WL 2875627, at *7 (N.D.I11.9/30/07) (a diagnosis of post-traumatic distress accompanied by “sleeplessness, discomfort, fear, and regret are exactly the sorts of intermediate effects that consistently fail to meet the high bar of [NIED] impact”); Myseros v. Sissler, 289 Va. 8, 387 S.E.2d 463, 465 (1990) (post-traumatic stress disorder, anxiety disorder, nausea, difficulty sleeping and breathing, and loss of appetite and weight, are manifestations of an underlying emotional disturbance, not of a physical injury). Cf. Bloom v. Consolidated Rail Corp., 41 F.3d 911, 915 n. 5 (3d Cir.1994) (noting, in dicta, that “[the plaintiff] did demonstrate physical manifestation [of emotional distress] through weight loss, loss of sleep, nightmares, vomiting, and diagnosed post-traumatic stress disorder); Maldonado v. National Acme Co., 73 F.3d 642 (6 Cir. 1996) (evidence that the plaintiff suffered from asthma, high blood pressure, heart problems, and paranoia related to his post-traumatic stress disorder, and felt jittery, anxious, irritable, depressed, and fearful of death, created an issue of material fact as to whether the plaintiff suffered objective physical injury as a result of his initial emotional distress); Marchica v. Long Island R. Co., 31 F.3d 1197, 1203-04 (2 Cir.1994) (for purposes of his NIED claim, the plaintiffs emotional distress manifested itself physically in post-traumatic stress disorder, accompanied by sleeplessness, weight loss, vomiting, rashes, and anxiety); Botek v. Mine Safety Appliance Corp., 531 Pa. 160, 611 A.2d 1174, 1176-77 (1992) (plaintiff 1 ucould recover for his psychological and emotional injuries, including his post-traumatic stress disorder, where such psychological and emotional injuries were accompanied by nausea and headaches, two “objective, measurable, observable physical injuries”).”
In those cases in which the court listed sleeplessness or anxiety as a physical manifestation of emotional distress, the plaintiffs also suffered additional, objective, measurable symptoms such as high blood pressure, heart problems, nausea, vomiting or rashes. Those additional, measurable physical symptoms are not present in this case. While sleeplessness, nightmares and loss of appetite can affect behavior that necessarily involves the body’s rest and maintenance, they are usually considered to be subjective aspects or elements indicative of mental or emotional distress. Standing alone, they are not ordinarily considered to be physical injuries or illness.[4]
*942 Additionally, Dr. Baker indicated that Covington suffered from many symptoms prior to the accident due to the stress from her parents’ divorce, the death of her father in an automobile accident three years ago, and the rape in high school. He indicated, however, that the accident likely made the symptoms worse. We note that Covington reported no weight loss, which could have supplied objective evidence of her loss of appetite. In fact, she reported in her deposition that she has gained weight from her normal 115 pounds prior to or near the time of the accident. For these reasons, we are not persuaded that her sleeplessness, nightmares and loss of 11flappetite constitute physical injuries or consequences resulting from the accident. These symptoms are generally considered to be emotional harms because they lack the kind of objective manifestation required to constitute physical injury or physical consequences. We conclude therefore that Covington suffered no physical injuries accompanying the accident.
Covington also asserts that she is not required to show outrageous conduct by the defendant because she suffered property damage to her automobile. This argument has no merit. Those cases cited by the supreme court in Moresi, supra, in which property damage caused extreme emotional distress involved extensive loss or destruction of property of great or special value to the plaintiff.[5] Besides, Cov-ington never claimed that the severe emotional distress she suffered from was caused from the property damage she incurred to her vehicle.
When we utilize the duty-risk analysis, the significance of the Moresi decision to the “legal cause” inquiry or “legal duty” question becomes manifest. All motorists have a general duty to maintain their vehicles in reasonably good working condition such that they do not become a hazard to other motorists. Assuming Knight failed to properly maintain its truck, with the result that the drive shaft assembly fell off the vehicle onto the Interstate highway, this failure was a cause-in-fact of the accident. The critical question is whether the risk of the resulting harm that Covington suffered falls within the scope of protection of Knight’s general duty (the “scope of protection” or the “legal cause” inquiry). Roberts v. Benoit, 605 So.2d 10321 ifi(La.l991).[6]
*943 Clearly, the risk of damage to Coving-ton’s vehicle and any physical injuries sustained would fall within the scope of protection afforded by Knight’s general duty. However, Moresi, in accord with policy considerations, clearly places limitations on the scope of protection this duty affords in NIED cases where there is no physical injury. In determining the limitation to be placed on liability for a defendant’s substandard conduct, that is, whether there is a duty-risk relationship, the proper question is how easily the risk of injury to plaintiff can be associated with the duty sought to be enforced. Roberts, supra at 1045; Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Where there is not an ease of association between the duty breached and the damages h7sustained, courts have found legal fault lacking. Roberts, supra; Hill, supra; Sibley v. Gif-ford Hill & Comp., 475 So.2d 315, 319 (La.1985); see also Williams v. Southfield School, Inc., 494 So.2d 1339,1342 (La.App. 2 Cir.1986).
Because the incident in this case did not result in any physical injury and only minor property damage, we do not find an “ease of association” between Covington’s mental distress and Knight’s conduct. Nor do the facts indicate that Knight owed an independent, direct duty to Covington. The summary judgment evidence does not show that Knight had any knowledge of Covington’s particular susceptibility to emotional distress; thus, “its negligence must be judged in the light of the effect such conduct would ordinarily have on a person of ordinary sensibilities.” Succession of Harvey, supra. Dr. Baker’s deposition testimony indicated that Covington’s mental distress from this accident occurred because she was particularly susceptible to emotional distress due to previous events in her life. He stated that this incident was the proverbial “straw that broke the camel’s back.”
Considering the above facts, circumstances, and the special restrictions in NIED cases, we find that the ease of association between Knight’s alleged negligence and the risk of severe mental distress to this plaintiff is very attenuated, if not altogether lacking. “Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury.” Malone, Ruminations on Cause-In-Fact, 9 Stan L.Rev. 60, 73 (1956). The intent of the legislature and courts is to limit the class of claimants and prevent false claims. Crockett v. Cardona, supra. This policy protects the | ^court's time and limited resources. Id.
We conclude that Knight’s conduct was not a legal cause of Covington’s mental distress. Therefore, this element of the duty-risk analysis is lacking.
Finally, Covington attempts to counter this argument with the principle that “a tortfeasor takes his victim as he finds him” — the so-called “eggshell plaintiff’ rule. Under this principle, the tort-feasor is responsible for the full extent of the plaintiffs damages even if those injuries would not have occurred but for the plaintiffs pre-existing physical condition, disease, or susceptibility to injury. Although her “pre-existing” condition is not a physical condition or illness as with the ordinary eggshell plaintiff, she argues that the same rule should apply. We disagree. The eggshell plaintiff principle concerns the amount or extent of damages recoverable from the defendant due to his negli *944 gence when the plaintiff has pre-existing injuries. It does not ease or lessen the plaintiffs burden of showing that the defendant’s breach was a legal cause of her injury. Even if the eggshell plaintiff rule applied to NIED cases where there are no physical injuries, the defendant’s conduct is judged under an objective standard, i.e., the effect such conduct would have on a person of ordinary sensibilities, unless the defendant knew or should have known that the plaintiff is particularly susceptible to emotional distress. Knight’s negligence in this case would ordinarily result in little more than annoyance to the victim. Therefore, there is no “ease of association” between the harm claimed, i.e., severe emotional distress, and the conduct of Knight.
119Conclusion
For the reasons state above, we conclude that the plaintiff cannot carry her burden of proof at trial. The threshold requirements of Moresi, supra, for a viable cause of action for NIED are not present. The special circumstances involving the especial likelihood of genuine and severe mental distress are absent, and the defendants’ conduct was not outrageous. Nor can the plaintiff show under a duty-risk analysis that the defendants’ conduct was a legal cause of the plaintiffs harm.
Accordingly, the writ is granted and made peremptory, Knight’s motion for summary judgment is granted and the plaintiffs claim is dismissed at her cost.
WRIT GRANTED AND MADE PEREMPTORY; SUMMARY JUDGMENT GRANTED; CLAIM DISMISSED.

. Plaintiff’s vehicle may have sustained two flat tires.

. The court gave the following examples:
A number of courts have allowed recovery against a telegraph company for the negligent transmission of a message, especially one announcing death, indicating on its face a potential for mental distress. E.g., Graham v. Western Union, 109 La. 1069, 34 So. 91 (1903). Some others have allowed similar recoveiy for the mishandling of corpses, see French v. Ochsner Clinic, 200 So.2d 371 (La. App. 4 Cir.1967); Blanchard v. Brawley, 75 So.2d 891 (La.App. 1 Cir. 1954); Morgan v. Richmond, 336 So.2d 342 (La.App. 1 Cir. 1976); Shelmire v. Linton, 343 So.2d 301 (La.App. 1 Cir. 1977); failure to install, maintain or repair consumer products, Pike v. Stephens Imports, Inc., 448 So.2d 738 (La.App. 4 Cir. 1984); failure to take photographs or develop film, Grather v. Tipery Studios, Inc., 334 So.2d 758 (La.App. 4 Cir.1976); negligent damage to one’s property while the plaintiffs were present and saw their property damaged, Holmes v. Le Com Corp., 99 So.2d 467 (Orl.La.App.1958); Lambert v. Allstate Ins. Co., 195 So.2d 698 (La.App. 1 Cir.1967); and in cases allowing damages for fright or nervous shock, where the plaintiff was actually in great fear for his personal safety. Pecoraro v. Kopanica, 173 So. 203 (Orl.La.App. 1937); Klein v. Medical Building Realty Co., 147 So. 122 (Orl.La.App.1933); Laird v. Natchitoches Oil Mill, Inc., 10 La.App. 191, 120 So. 692 (2 Cir. 1929); Cooper v. Christensen, 212 So.2d 154 (La.App. 4 Cir. 1968).

. The Scamardo court was quoting from the supreme court opinion in White v. Monsanto, 585 So.2d 1205 (La.1991), at 1210, discussing the level of mental distress required for a plaintiff to recover for intentional infliction of emotional distress, unless the defendant has knowledge that the plaintiff is particularly susceptible to emotional distress.

. See 4 Bruner & O’Conner, Construction Law, § 11:80.10, "Bodily Injury and the need *942 for physical manifestations.”

. Holmes v. Le Cow Corp., supra n. 2, and Lambert v. Allstate Ins. Co., supra n. 2.

. Discussing this inquiry, the court stated:
The scope-of-protection inquiry is significant in "fact-sensitive” cases in which a limitation of the "but for” consequences (cause-in-fact inquiry) of the defendant’s substandard conduct is warranted.
There is no "rule” for determining the scope of the duty. Regardless if stated in terms of proximate cause, legal cause, or duty, the scope of the duty inquiry is ultimately a question of policy as to whether the particular risk falls "within the scope of the duty.” Citing Edwards v. State, 556 So.2d 644, 648-49 (La.App. 2 Cir. 1990). In making this policy determination, this court has previously quoted the following language from Malone, Ruminations on Cause-In-Fact, 9 Stan. L.Rev. 60, 73 (1956), which is worthy of repetition.
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises. How appropriate is the rule to the facts of this controversy? This is a question that the court cannot escape. *943 Roberts, supra at 1044.